UNITED STATES of America for the Use and Benefit of MICRO–KING COMPA-NY, Plaintiff-Appellee Cross Appellant,

v.

COMMUNITY SCIENCE TECHNOLOGY, INC., Community Science Technology Development Corporation and Great American Insurance Company, Defend-ants-Appellants Cross Appellees.

No. 76–2022.

United States Court of Appeals, Fifth Circuit.

June 14, 1978.

John C. Bell, Jr., James E. Slaton, Augusta, Ga., John L. Blandford, Chamblee, Ga., for defendants-appellants cross appellees.

William A. Trotter, III, Augusta, Ga., for plaintiff-appellee cross appellant.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This is a case brought under the Miller Act, 40 U.S.C. §§ 270a *et seq.* (1970), by use plaintiff Micro-King, a subcontractor, against the prime contractor, Community Science Technology, Inc. (CST), and the surety supplying its performance and payment bonds for the job, The Great American Insurance Company. The district court found for Micro-King on its claim that CST breached its contract by failing to make a substantial payment for work performed, and awarded damages to it in quantum meruit, offset by the amount over the contract price expended by CST to complete Micro-King's work. Both parties timely appealed. We affirm the judgment of the district court both as to the appeal by CST, and the cross-appeal by Micro-King.

## I. THE FACTS

In 1972, CST contracted with the United States Army Corps of Engineers to construct 200 units of family housing at Fort Gordon, Georgia. Initially, CST subcontracted the outside utilities construction work on the project to the Peter C. David Company (David). David performed its work on a profit sharing basis with the Micro-King Company. When David withdrew from the project without fulfilling its obligations, CST on September 20, 1973, contracted with Micro-King to perform the remaining outside utilities work. In pertinent part, the contract provided that Micro-King must perform and complete its work according to plans and specifications incorporated by reference into the primary contract between the Corps of Engineers and CST "to the satisfaction of the architect, the owner [the Corps of Engineers U. S. Army]" and CST. Plaintiff's Exhibit 14, Article III. Article VI of the contract provided for progress payments:

> Payment will be made once each month as the work progresses, providing that all work has been in full accordance with all the terms of this agreement. Progress payments shall be prepared on the basis of the percentage of work completed and submitted to [CST's] Project Manager or Superintendent for approval.

Micro-King proceeded to work on the sanitary sewer lines, storm drainage system and gas and water distribution systems for the project, submitting applications for partial payments. For its part, CST, up to and including April 22, 1974, paid all sums as requested. On August 5, 1974, Micro-King submitted a payment application for $9,060.62, stating that its contractual requirements were 100 percent complete. Plaintiff's Exhibit 4. This application was signed and approved by Dominick Rufrano, the project manager, T. 181–82; Defendant's Exhibit 30; but no payment was made. On September 13, 1974, Micro-King, again stating that its work was complete, left the job site to perform work on an unrelated project in California. On October 7, 1974, it submitted a bill to CST for the amount outstanding under the contract plus an additional $12,780 for extra work outside the contract, performed by Micro-King at CST's request. Finally, in response to the August 5 invoice, CST sent Micro-King a

check for $5,726.73, dated October 19, 1974. According to CST, the Corps of Engineers that month refused to approve the work done by Micro-King, noting numerous deficiencies. CST estimated the costs it would incur to correct these deficiencies and deducted that amount from the sums owed to Micro-King under the contract, leaving the $5,726.73 ultimately paid to Micro-King. CST used its own crews and other subcontractors to complete, repair, and test the outside utilities work which Micro-King had agreed to perform.

On February 14, 1975, Micro-King filed suit against CST under the Miller Act, 40 U.S.C. §§ 270a *et seq.*, seeking to recover the balance due on the contract price, compensation for work done outside the contract, and attorneys' fees. CST counterclaimed to recover the costs it had incurred beyond the contract price in order to complete, repair, and test the work covered by its contract with Micro-King, to the satisfaction of the Corps of Engineers. Prior to trial, the parties stipulated that CST had paid Micro-King $72,801.71 of the adjusted agreed price, $93,800.

After a three day trial, the jury delivered its verdict by answering 12 special interrogatories, propounded by the court as provided by Rule 49(a), F.R.Civ.P. As to breach of contract, the jury found that, although Micro-King did not complete "all that it was required to do under its contract to the reasonable satisfaction of the defendant and the Corps of Engineers", this failure was caused by CST's failure to pay Micro-King "a substantial sum due . . . under the contract for work performed. . ."

1. The *Rich* case firmly established that "the scope of the remedy as well as the substance of the rights created [by the Miller Act] is a matter of federal not state law". 417 U.S. at 127, 94 S.Ct. at 2164. As to attorneys' fees, the Court specifically stated: "We think it better to extricate the federal courts from the morass of trying to divine a 'state policy' as to the award of attorneys' fees in suits on construction bonds". *Id.* *Rich* thus runs contrary to and by implication overrules an unbroken line of Miller Act cases in this Circuit holding that state law "governs" the award of attorneys' fees through incorporation into federal law. See, e. g., *Transamerica Insurance Co. v. Red Top*

The amount of damages suffered by Micro-King as a result of CST's failure to pay was found by the jury to be "undeterminable". As to work "beyond the scope of the contract" done at the request of CST, the jury found that Micro-King conferred a benefit of $15,052.75 upon CST for which it had not been paid. The jury also found that CST had expended $9,843.50 to complete Micro-King's work under the contract. Finally, the jury found that reasonable attorneys' fees for the services rendered by counsel for either party were $6,500.00. The court entered judgment on the jury's verdict, awarding Micro-King $5,209.25 in damages, representing the difference between $15,052.75 and $9,843.50, and $6,500.00 in attorneys' fees. The court subsequently denied CST's post-trial motions. CST timely filed a notice of appeal to this Court, and Micro-King has cross-appealed.

## II. THE ISSUES RAISED

1. *The Award of Attorneys' Fees*:

"The so-called 'American Rule' governing the award of attorneys' fees in litigation in the federal courts is that attorneys' fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefore'." *F. D. Rich Co., Inc. v. United States for the Use of Industrial Lumber Co., Inc.*, 417 U.S. 116, 126, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703 (1974), citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).[1] The contract in this case clearly provided for an award of attorneys' fees:

*Metal, Inc.*, 384 F.2d 752, 755 (5th Cir. 1967); *Boyd Callan, Inc. v. United States*, 328 F.2d 505, 512 (5th Cir. 1964); *United States for the Use of Dixie Plumbing Supply Co. v. Taylor*, 293 F.2d 717, 723 (5th Cir. 1961); *United States for the Use and Benefit of Caldwell Foundry and Machine Co., Inc. v. Texas Construction Co.*, 237 F.2d 705, 707 (5th Cir. 1955). Cf. *United States for the Use and Benefit of Carter Equipment Co., Inc. v. H. R. Morgan, Inc.*, 554 F.2d 164, 166 (5th Cir. 1977). Surprisingly, the parties to this appeal fail to cite *Rich* and base their arguments almost exclusively upon Georgia contract law.

Should any litigation or arbitration be commenced between the parties hereto, with respect to this agreement or the rights and duties of either in relation thereto, the party prevailing in such litigation or arbitration shall be entitled, in addition to such other relief as may be granted, to reasonable sums as and for attorney's fees and costs. Plaintiff's Exhibit 14, Article X.

CST contends that the award of attorneys' fees to Micro-King was improper because the damages recovered by Micro-King were founded in tort and quantum meruit and did not arise out of the contract. Instead, CST argues that it was entitled to attorneys' fees as the prevailing party because the damages recovered by Micro-King were offset by the amount over the contract price spent by CST to complete Micro-King's work under the contract. We are not so persuaded.

The money damages awarded to Micro-King were founded in quantum meruit and were "beyond the scope of the contract between Micro-King Company and [CST]".[2] Nevertheless, by its response to special interrogatory No. 2, the jury clearly found that CST breached the contract by its failure "to pay plaintiff a substantial sum due plaintiff under the contract for work performed by plaintiff".[3] The jury's finding that the damages suffered by Micro-King as a result of this breach by CST were "undeterminable" is irrelevant to the fact that Micro-King legally prevailed on its claim under the contract. By any reasonable construction, the requirements for an award of attorneys' fees under the contract were met. Cf. *United States for the Use and Benefit of Mariana v. Piracci Construction Co., Inc.*, 405 F.Supp. 904, 907 (D.D.C. 1975). We hold that the district court did not commit error in awarding attorneys' fees to Micro-King as the prevailing party.

2. *Sufficiency of the Evidence Supporting the Awards:*

CST contends that the evidence does not support an award of $15,052.75 to Micro-King for extra work outside the contract and that the award of $9,843.50 to CST for completing Micro-King's work is grossly insufficient and contrary to the weight of the evidence. Stripped to essentials, CST's argument is that the jury chose to believe the wrong evidence—an all too familiar but altogether inappropriate appellate argument. As a reviewing court, we defer to the credibility choices made by the

---

**2.** Micro-King argues that CST's acceptance of the extra work performed amounted to an oral modification of the contract. Hence, it posits, the recovery for extras in quantum meruit "went to the reasonable value of the additional work and labor which was [sic] outside the scope of the contract as originally written but which was included within said contract (P–14) as subsequently orally modified by the parties". Brief of Appellee at 13. This argument cannot be reconciled with the jury's specific finding that the extra work done "was beyond the scope of the contract". As we explain in the text, the award of attorneys' fees need not be reconciled with the award of damages in quantum meruit.

**3.** Although the interrogatory did not specifically ask whether this failure constituted a breach, the court's charge to the jury made clear that an affirmative response to special interrogatory No. 2 would be tantamount to a finding that CST breached the contract. The relevant portion of the charge was as follows:

Now, in a building or construction contract calling for the performing of labor and furnishing of materials covering a long period of time and involving large expenditures, a stipulation in the contract for payments on account to be made from time to time during the progress of the work may be deemed so material that a substantial failure to pay would justify the contractor in declining to proceed. I charge you that if you find that the Defendants withheld the payment of an installment unconditionally owed to the Plaintiff, that such conduct would constitute a breach of a material provision of the contract between the parties, thereby excusing Plaintiff from further performance and would permit the Plaintiff to recover the reasonable value of services rendered. T. 23A–24A.

This instruction was correct as a matter of law. *United States for the Use and Benefit of Pickard Engineering Co. v. Southern Construction Co.*, 293 F.2d 493, 498 (6th Cir. 1961). The key, of course, is that the failure to pay be substantial. *United States for the Use and Benefit of Aucoin Electric Supply Co. v. Safeco Insurance Co. of America*, 555 F.2d 535, 541 (5th Cir. 1977).

fact-finder. *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978). Having reviewed the record in this case, we hold that the jury's verdict was based upon sufficient evidence. We note that while CST contends that it spent more than $71,349.53 to complete Micro-King's work and the jury awarded only $9,843.50, the correct measure of damages, as the court instructed the jury, was the amount *above the contract price* that CST was required to pay.[4]

2. *Deduction of Costs Incurred by CST* :

■■ In its cross-appeal, Micro-King argues that the trial court erred in allowing CST to recover the costs it incurred in completing the contract because the jury found that CST had breached the contract by failing to pay Micro-King a substantial sum due, thus excusing any further performance by Micro-King. However, Micro-King filed no post-trial motions and did not in any manner challenge the court's judgment deducting CST's completion costs from Micro-King's award of damages in quantum meruit. It is established law in this Circuit that a reviewing court does not consider issues raised for the first time on appeal, except where a pure question of law is involved and a refusal to consider it would result in a miscarriage of justice. *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976); *Adams v. Askew*, 511 F.2d 700, 705 (5th Cir. 1975); *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641, 658 n. 47 (5th Cir. 1974); *D. H. Overmyer Co. v. Loflin*, 440 F.2d 1213 (5th Cir. 1971), cert. denied, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90. Because we are confident that no miscarriage of justice will result, we decline to reach this issue raised for the first time on appeal. The Clerk of this Court is directed to assess costs incurred in this appeal one-fourth against Micro-King, and three-fourths against CST.

The judgment appealed from is in all respects

AFFIRMED.

---

**4.** Special interrogatory No. 10 asked only "how much money did (CST) expend to complete such work?" and did not provide for subtraction from the contract price. In instructing the jury, however, the trial court explained:

Finally, the Defendant has counterclaimed against the Plaintiff because it claims that it has spent more to have the work done than

what Micro-King agreed to do the work for in its contract, and Defendant claims that it is entitled to recover from Micro-King any amount of money over the contract price which Defendant has had to spend in order to complete and warranty the work which Micro-King contracted to do. T. 10A.