831 F.2d 1514
 Juan Francisco VENEGAS, Plaintiff-Appellant,
v.
Kenneth B. WAGNER; James A. Borsos; John R. Prchal;
Ronnie J. Skaggs; Carthel S. Roberson; Douglas
E. Bostard; Robert M. Bell; Michael Z.
Whalen, Defendants-Appellees.
Juan Francisco VENEGAS, Plaintiff-Appellee,
v.
Kenneth B. WAGNER; James A. Borsos; John R. Prchal;
Douglas E. Bostard; Robert M. Bell; Michael Z.
Whalen, Defendants,
and
Ronnie J. Skaggs and Carthel S. Roberson, Defendants-Appellants.
Juan Francisco VENEGAS, Plaintiff-Appellee,
v.
Ronnie J. SKAGGS and Carthel S. Roberson, Defendants-Appellants.
 Nos. 86-6043, 86-6044 and 86-6409.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1987.
Decided Nov. 9, 1987.
 
 Michael S. Bromberg, Sag Harbor, N.Y., for plaintiff-appellant.
 John R. Calhoun and Robert E. Shannon, Long Beach, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before TANG, SCHROEDER and BEEZER, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Juan Francisco Venegas appeals from the district court's granting of a judgment notwithstanding the verdict (JNOV) and from the conditional granting of a new trial, as to defendant Douglas Bostard, on Venegas' 42 U.S.C. Sec. 1983 and Sec. 1985(3) claim that defendants conspired to deny him a fair trial. Venegas contends that substantial evidence supports the verdict of the jury with respect to defendant Bostard such that the court erred in granting a JNOV and abused its discretion in conditionally granting Bostard's motion for a new trial. Defendants Ronnie Skaggs and Carthel Roberson appeal from the jury verdict and from the judgments awarding damages and attorney fees. We affirm the judgment of the district court in all respects.
 
 BACKGROUND
 
 2
 On Christmas Day, December 25, 1971, William Staga was murdered in his apartment in Long Beach, California. The coroner's report indicated death was caused by blows to the head inflicted with a blunt instrument. In addition to the head wounds, Staga's corpse bore multiple lacerations on his wrists, back, lower abdomen and genitals. Because the lacerations were shallow, uniform in length, and "incise" rather than "defense" wounds the coroner concluded they were intentionally inflicted while the victim was either unconscious or physically restrained in such a manner as to prevent him from writhing in response to the pain. One-half hour after the murder, the plaintiff-appellant, Juan Venegas, was arrested in company with Lawrence Reyes approximately two blocks from the scene of the crime.
 
 
 3
 Following investigation, the Long Beach police compiled a strong case against Reyes, who was ultimately convicted of first degree murder. At the murder trial, Reyes confessed to the killing of Staga and exonerated Venegas. Venegas, named as Reyes' accomplice and prosecuted as his co-defendant, was also convicted of first degree murder.
 
 
 4
 Venegas' conviction was reversed by the California Supreme Court in People v. Reyes, 12 Cal.3d 486, 526 P.2d 225, 116 Cal.Rptr. 217 (1974) based on insufficiency of the evidence. Reyes' conviction was affirmed over his contentions of legal error. Id.
 
 
 5
 On October 28, 1977, Venegas filed this action under 42 U.S.C. Sections 1983 and 1985(3) alleging that defendant officers conspired to deny him a fair trial by tampering with witnesses and knowingly presenting false evidence and perjured testimony to the criminal jury. The district court granted summary judgment to the defendants on the ground that the action was barred under the applicable statute of limitations. That judgment was reversed and remanded for trial in Venegas v. Wagner, 704 F.2d 1144 (9th Cir.1983).
 
 
 6
 Defendants Roberson and Skaggs of the Long Beach Police Department were the primary homicide investigators on the Staga murder. They were assisted by Long Beach detectives Douglas Bostard and Robert Bell. Roberson interviewed a number of witnesses, including Marilyn Stoeltje, Emily Mallas, Henry Meade and Melba Penn. At the criminal trial, the prosecution relied on the testimony of Mrs. Penn to demonstrate the presence of Venegas at the scene of the crime. At trial, however, Mrs. Penn was unable to identify Venegas or Reyes, though she thought Venegas more closely resembled the man she saw that morning. Two of the other witnesses, Mrs. Mallas and Mrs. Stoeltje, positively identified Reyes as the man who fled Staga's apartment carrying a television, and a third witness, Meade, testified he was certain Venegas was not the man and he suspected Reyes was. Meade also testified that he heard two voices which he did not recognize coming from Staga's apartment.
 
 
 7
 Sargeants Roberson and Skaggs also interviewed John Sanderson, a bartender at the Royal Cuckoo Bar. At the criminal trial, Sanderson testified that on the morning of the murder, Reyes and Venegas entered his bar on Daisy Avenue shortly after 7:00 a.m. and stayed for ten or fifteen minutes. In Venegas' section 1983 action, however, the deposition testimony of Sanderson was introduced wherein Sanderson stated he had perjured himself in the earlier trial, and that in fact, Venegas was not in his bar that morning. Sanderson stated that he had been intimidated by two Long Beach detectives, later identified as Skaggs and Roberson, into falsely testifying. The credibility of Sanderson's deposition testimony was impeached by the testimony of William Kaeler, a fellow bartender, Sanderson's son, James, and Gerald Desmond, a Deputy City Attorney from Long Beach. Each of these witnesses testified to out-of-court statements by Sanderson in which he affirmed his original version of the facts.
 
 
 8
 Long Beach Police Officer Douglas Bostard interviewed Venegas on the morning of December 25, 1971. Venegas alleged he was physically abused by Bostard during the interview. Sgt. Bostard also had a telephone conversation with Venegas' sister, Terry Hayward, on the morning of December 25 in which he told her Venegas did not need a lawyer. Bostard attended the autopsy of William Staga and made a narrative report of what he observed.
 
 
 9
 Two of the originally named defendants, Officers Borsos and Wagner, who arrested Venegas, were dismissed at the end of plaintiff's case on defendants' motion under Fed.R.Civ.P. 50(a). Defendant Michael Whalen was dismissed prior to the commencement of the trial.
 
 
 10
 On February 27, 1986, the jury returned a verdict in favor of Venegas and against defendants Skaggs, Roberson and Bostard in the amount of $2 million compensatory damages and $40,000 each in punitive damages. The jury found Officer Bell was not liable to Venegas. The district court denied the motions of defendants Skaggs and Roberson for directed verdict, JNOV, and for new trial. It further granted defendant Bostard's motion for JNOV, and conditionally granted his motion for a new trial. On August 14, 1986, the court awarded attorneys' fees pursuant to 42 U.S.C. Sec. 1988 as against defendants Skaggs and Roberson, in the total amount of $117,000.
 
 ANALYSIS
 I. Judgment Notwithstanding the Verdict
 A. Standard of Review
 
 11
 This court reviews the propriety of a JNOV under the same standard that is applied by the district court. Peterson v. Kennedy, 771 F.2d 1244, 1252 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). A JNOV is proper when the evidence permits only one reasonable conclusion as to the verdict. Id. The jury's verdict must be supported by substantial evidence in order to stand. Mosesian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 877 (9th Cir.), cert. denied, 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984). We view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Peterson, 771 F.2d at 1252. A JNOV is improper if reasonable minds could differ over the verdict. Id.
 
 B. Defendants Skaggs and Roberson
 
 12
 In the jury trial below, verdict was rendered against defendants Skaggs, Roberson and Bostard. The primary evidence introduced against Skaggs and Roberson was the deposition testimony of John Sanderson who, at the time of trial, was deceased. According to the district court, without the deposition testimony of Sanderson, the jury would have been unable to find defendants liable. Given this testimony, however, the district court held that a jury could reasonably find Skaggs and Roberson liable, and accordingly, denied their motions for directed verdict and JNOV.
 
 
 13
 In his deposition, Sanderson stated that he had been interviewed by two Long Beach police officers who indicated they wanted him to testify that the two Mexicans were together in the bar around 7:00 a.m. because he "was the only guy who could do it" and "they were having trouble putting the case together." Although Sanderson knew he would be lying, he allegedly agreed to testify in the state criminal trial in return for protection and out of fear of police harassment.
 
 
 14
 Viewed in the light most favorable to Venegas, the record contains evidence sufficient to support a jury verdict that defendants Skaggs and Roberson had procured false testimony from Sanderson, thereby denying Venegas a fair trial. Venegas' presence at the bar with Reyes on December 25, 1971 was at least a material fact and considered with the other evidence presented at the criminal trial, could have resulted in conviction. The evidence on the issue of Sanderson's credibility was sharply disputed, but it is the function of the jury, not this court, to resolve the conflict. See, e.g., Walker v. KFC Corp., 728 F.2d 1215, 1223 (9th Cir.1984); Garter-Bare Co. v. Munsingwear, Inc., 723 F.2d 707, 713 (9th Cir.), cert. denied 469 U.S. 980, 105 S.Ct. 381, 83 L.Ed.2d 316 (1984). The district court's denial of Skaggs and Roberson's motion for JNOV is affirmed.
 
 C. Defendant Bostard
 
 15
 The district court concluded that the record was critically deficient of that minimum quantity of evidence from which a jury might reasonably find that defendant Bostard caused the denial, or conspired to deny, Venegas a fair trial. The court so found principally because Sanderson's deposition testimony in no way implicated Bostard. After reviewing the evidence presented in a light most favorable to Venegas, we agree with the district court's conclusion; however offensive some of Officer Bostard's acts may have been, there was not substantial evidence to support the conclusion that the conduct described deprived Venegas of his constitutional right to a fair trial.
 
 
 16
 To sustain an action under section 1983, the plaintiff must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of a constitutional right. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). None of the parties has questioned the "under color of state law" requirement in this case; our inquiry therefore focuses on the second requirement, whether Venegas was deprived of his constitutional right to a fair trial as a result of Bostard's conduct. The relevant causation requirement was set forth in Venegas v. Wagner, 704 F.2d 1144, 1146, n. 1 (9th Cir.1983): "In asserting denial of a fair trial, plaintiff has the burden of alleging (and proving) defendant's conduct proximately caused the conviction and damages which flow therefrom." (Citing Smiddy v. Varney, 665 F.2d 261, 266-68 (9th Cir.1981), cert. denied, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982)). See also, Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355-56 (9th Cir.1981) (discussion of proximate causation and federal civil rights actions). A section 1985 action additionally requires the plaintiff to show "that the acts done in furtherance of the conspiracy resulted in his injury." See Arnold, 637 F.2d at 1355 (quoting Sykes v. California, 497 F.2d 197, 200 (9th Cir.1974)). Under the controlling standards, the evidence presented against Bostard falls short.
 
 
 17
 Venegas claimed, first, that Bostard physically abused him in the course of an interrogation on December 25, 1971. The record indicates that Bostard pushed Venegas, grabbed him by the neck, and accused him of being a murderer; Venegas also testified that Bostard slammed Staga's wallet down to emphasize the accusation. The district court found that "only by speculation, rather than logical inference, can this evidence connect Bostard to the conspiracy or to plaintiff's denial of a fair trial." No confession or other incriminating statements ever resulted from the interrogation.
 
 
 18
 Second, Venegas refers to testimony that Bostard told plaintiff's sister in a phone conversation Christmas morning that Venegas did not need an attorney. The district court rejected this as evidence of a conspiracy and found it causally unrelated to Venegas' conviction. Venegas obtained the services of an attorney on the morning he was arrested.
 
 
 19
 Third, Venegas relies on the fact that Bostard attended Staga's autopsy and suggests that Bostard may have come up with the "two-killer" theory that ultimately proved central to Venegas' conviction. Bostard stated that in attending the autopsy, one of his purposes as a homicide investigator was to "align the circumstances that the initial on-the-scene investigation lends you with the trauma that's noted on the body ..." At the murder trial, however, the prosecution relied on the testimony of the coroner, Dr. Choi, to advance its "two-killer" theory based on the nature of the lacerations on Staga's body.
 
 
 20
 Construing the evidence in a light most favorable to the plaintiff, the jury had before it evidence indicating that Bostard conducted a "rough interrogation" of Venegas, that in a phone conversation with plaintiff's sister denied that Venegas needed an attorney the morning of his arrest, that he attended Staga's autopsy and that he performed certain other tasks at the request of the district attorney. What is lacking in the record is any evidence linking Bostard to the plan to suborn perjury from Sanderson or otherwise indicating an unlawful course of conduct that proximately caused Venegas' conviction.
 
 
 21
 JNOV is proper when the jury verdict is not supported by substantial evidence. Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir.1985), cert. denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). In this case, that minimum quantity of evidence necessary to support the causal connection between Bostard's acts and Venegas' conviction is absent. The district court's granting of Bostard's motion for JNOV is affirmed.
 
 II. Motions for a New Trial
 A. Standard of Review
 
 22
 We review the grant or denial of a motion for a new trial for an abuse of discretion. Robins v. Harum, 773 F.2d 1004, 1006 (9th Cir.1985); Transgo, Inc., 768 F.2d at 1014.
 
 
 23
 Although a district court's ruling on an alternative motion for new trial may involve the exercise of a measure of discretion, a stringent standard applies when the motion is based on insufficiency of the evidence. Digidyne Corp. v. Data General Corp., 734 F.2d 1336, 1347 (9th Cir.1984), cert. denied, 473 U.S. 908, 105 S.Ct. 3534, 87 L.Ed.2d 696 (1985). A motion for a new trial may be granted on this ground only if the verdict is against the "great weight" of the evidence or "it is quite clear that the jury has reached a seriously erroneous result." Id.
 
 B. Defendants Skaggs and Roberson
 
 24
 In conjunction with its denial of the defendants' motion for JNOV, the district court denied the motion of defendants Skaggs and Roberson for a new trial. Skaggs and Roberson argued this was error on the ground that the district court failed to exercise the full scope of its discretion.
 
 
 25
 In denying the motion for new trial, the district court nevertheless noted it had "seriously considered" granting the motion on the ground that the verdict rendered was clearly against the weight, if not the "great weight," of the evidence. The district court ultimately applied the Digidyne standard, and also cited "due respect for the jury system" and "deference toward the adversarial process" as factors contributing to the decision to deny the motion.
 
 
 26
 The application of the Digidyne standard in this case was correct. The motion for a new trial was clearly based on the insufficiency of the evidence against Roberson and Skaggs to demonstrate a conspiracy to deny plaintiff a fair trial. As such, the motion was properly granted only if the verdict was against the "great weight" of the evidence or if the result was "seriously erroneous." Digidyne, 734 F.2d at 1347. In the case of Roberson and Skaggs, where the jury's verdict necessarily involved the resolution of the difficult question of the credibility of Sanderson's deposition testimony, the result cannot be characterized as indefensible or seriously erroneous. Further, under the stricter standard applicable to the motion for new trial, the district court's discretion was more limited. See, e.g., id. The district court correctly restrained itself from substitution of its own conclusion for that of the jury. The denial of the motion for new trial is affirmed.
 
 C. Defendant Bostard
 
 27
 The district court found that the verdict, as to defendant Bostard, was against the great weight of the evidence and concluded that the jury reached a seriously erroneous result. Accordingly, in conjunction with the grant of Bostard's motion for JNOV, the district court also conditionally granted the motion for a new trial under Fed.R.Civ.P. 50(c). Because we affirm the grant of JNOV in the case of Bostard, we need not reach the conditional grant of a motion for a new trial.
 
 III. Attorney's Fees
 
 28
 Attorney's fees awards, including those in the civil rights context made pursuant to 42 U.S.C. Sec. 1988, are generally reviewed for abuse of discretion. Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); Hardin v. White Mountain Apache Tribe, 779 F.2d 476, 480 (9th Cir.1985).
 
 
 29
 The lower court, after considering the specific factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976) as supplemented by Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984) awarded attorney's fees to Venegas, the prevailing party, in the amount of $117,000 against defendants Skaggs and Roberson. The district court's determination did not constitute an abuse of discretion.
 
 
 30
 AFFIRMED.