884 F.2d 1180
 UNITED STATES For Use and Benefit of Dennie REED, dba Dennie
Reed & Sons, Inc., Plaintiff-Appellee,
v.
C.E. CALLAHAN, dba C.E. Callahan Co.,
Defendant-Cross-claimant-Appellee,
v.
ESTO, INC., formerly known as H.A. Ekelin & Assoc.; United
Pacific Insurance Company; Reliance Insurance
Co., Defendants-Cross-claimants-Appellants.
UNITED STATES for Use and Benefit of Dennie REED, dba Dennie
Reed & Sons, Inc., Plaintiff-Appellee,
v.
C.E. CALLAHAN, dba C.E. Callahan Co.,
Defendant-Cross-claimant-Appellant,
v.
ESTO, INC., formerly known as H.A. Ekelin & Assoc.; United
Pacific Insurance Company; Reliance Insurance
Co., Defendants-Cross-claimants-Appellees.
 Nos. 86-5965, 86-5968.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1989.
Decided Sept. 6, 1989.
 
 Donald B. Devirian, Brown & Brown, Los Angeles, Cal., for H.A. Ekelin & Associates, United Pacific Ins. Co., and Reliance Ins. Co., defendants-cross-claimants-appellants.
 Herbert F. Blanck, Blanck & Blanck, Camarillo, Cal., for C.E. Callahan, defendant-cross-claimant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, HALL and WIGGINS, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 This case presents two appeals arising out of a district court action brought under the Miller Act, 40 U.S.C. Secs. 270a-270d (1982), in which Callahan recovered a judgment for damages and attorneys' fees against H.A. Ekelin and Associates ("Ekelin"). In No. 86-5965, Ekelin appeals the denial of its motion for judgment notwithstanding the verdict ("JNOV"). Ekelin also challenges the trial court's refusal to give certain proposed jury instructions.[1] In No. 86-5968, Callahan appeals the district court's decision to limit attorneys' fees to the pendent state law portion of his Miller Act suit against Ekelin. We affirm the district court's rulings on the JNOV motion and jury instructions. We reverse and remand the attorneys' fees decision because we conclude that Callahan is entitled to fees for his entire case.
 
 I.
 
 2
 This dispute grew out of the construction of several buildings at Ft. Irwin, California. The Department of the Army retained Ekelin as prime contractor for the project. United Pacific Insurance Company and Reliance Insurance Company issued the contractor's bond required under the Miller Act. 40 U.S.C. Sec. 270a (1982). Ekelin hired Callahan as a subcontractor to grade the building sites and place concrete aprons around each building.
 
 
 3
 Ekelin and Callahan did not enjoy the most harmonious of working relationships. Hired in March, 1982, Callahan left the job site eight months later after Ekelin terminated his services. The parties exchanged a number of accusations. Each insisted that the other failed to perform as required by the subcontract, thereby generating delays and errors, and ultimately causing a breach of the agreement. Ekelin asserted that Callahan's poor work performance forced it to complete some projects and rework others at its own expense. Callahan contended that Ekelin's mismanagement left him bankrupt, in debt, and partially uncompensated for work performed.[2]
 
 
 4
 This action began when Dennie Reed, a sub-subcontractor, named Callahan along with Ekelin and the sureties in a Miller Act suit. Callahan cross-claimed under the Miller Act and various state law provisions against Ekelin and the sureties. After some pretrial activity, Reed settled his case with Ekelin and dropped out of the suit. Callahan's cross-claims then went before a jury, which found for Callahan and awarded him $266,001.50 in total damages against all the defendants. Of that award, $69,222.50 consisted of state law delay damages levied against Ekelin alone.
 
 
 5
 Following the jury verdict, Callahan applied for attorneys' fees for his cross-claims. He based his fees argument on paragraph 9.2 of the contract he signed with Ekelin. This section reads in relevant part:
 
 
 6
 [In the event of breach or default by the subcontractor] the Contractor may ... through himself or others provide labor, equipment and materials to prosecute Subcontractor's work on such terms and conditions as shall be deemed necessary, and shall deduct the cost thereof, including without restriction thereto all charges, expenses, losses, costs, damages, and attorney's fees incurred as a result of the Subcontractor's failure to perform....
 
 
 7
 Although this paragraph applies on its face only to the collection of fees by the contractor against the subcontractor, Callahan contended that California's reciprocity rule for attorneys' fees, Cal.Civil Code Sec. 1717 (West 1985 & Supp.1989), made fees available to him.[3]
 
 
 8
 The trial judge agreed that fees were due, but only to the extent that the total damages award rested on state law. He reasoned that the Supreme Court's decision in F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), required application of federal common law to attorneys' fees claims in Miller Act cases. Since the contract provided fees only to the contractor and because section 1717 of the California Civil Code is not part of the federal common law, the trial court concluded that fees could not be ordered under federal law for the Miller Act portion of Callahan's case. The trial judge held, however, that fees were available under state law for Callahan's delay damages award. Since the damages for delay constituted about 26% of the total, he approved only 26% of Callahan's total fees request.
 
 
 9
 While Callahan pursued his fees claim, Ekelin sought to overturn the jury's verdict. At the close of plaintiff's case, Ekelin had moved for a directed verdict. The trial judge granted the motion with respect to several claims raised by Callahan involving negligence, bad faith, and delay damages under the Miller Act. He denied the motion for the remaining Miller Act and damages claims. After the jury rendered its decision, Ekelin moved for a JNOV or, in the alternative, for a new trial. Ekelin argued that the evidence introduced at trial was insufficient to sustain the verdict. Ekelin also asserted that the court erred by refusing to give certain jury instructions proffered by Ekelin. After consideration of the parties' arguments on these points, the district judge rejected the JNOV motion.
 
 
 10
 Ekelin challenges the denial of the JNOV motion and reasserts the jury instruction claim. Callahan appeals the decision to limit the award of attorneys' fees to only 26% of his case. Our jurisdiction comes under 28 U.S.C. Sec. 1291 (1982). We consider each argument in turn.[4]
 
 II.
 
 11
 We test the denial of a JNOV under the same standard used to review a jury verdict. Landes Const. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1370-71 (9th Cir.1987). A JNOV is properly denied when the verdict is supported by substantial evidence. Id. at 1371; Venegas v. Wagner, 831 F.2d 1514, 1517 (9th Cir.1987). If reasonable minds could differ over the verdict, a JNOV is inappropriate. Venegas, 831 F.2d at 1517; Peterson v. Kennedy, 771 F.2d 1244, 1252 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). We review the evidence in the light most favorable to the non-moving party, and draw all inferences in that party's favor. Venegas, 831 F.2d at 1517; Peterson, 771 F.2d at 1252.
 
 
 12
 Ekelin raises a battery of claims challenging the verdict. It insists that the evidence it introduced in the form of progress payment records, daily reports, change orders, billing statements and other documentary materials, lead to a single inexorable conclusion: Callahan was not entitled to damages or compensation of any sort beyond the fees he actually received. Ekelin returns repeatedly to the observation that Callahan's case consisted primarily of his own testimony, supported on occasion by other witnesses, while Ekelin's defense drew heavily on written sources. It maintains that its records should trump Callahan's words.
 
 
 13
 In essence Ekelin argues that the jury believed the wrong evidence: it should have accepted Ekelin's documents rather than Callahan's oral testimony. This claim, as the Fifth Circuit remarked in another Miller Act suit, is "an all too familiar but altogether inappropriate appellate argument." United States ex rel. Micro-King Co. v. Community Science Technology, Inc., 574 F.2d 1292, 1295 (5th Cir.1978). It is the jury's function to "weigh[ ] the contradictory evidence and inferences, judge[ ] the credibility of witnesses, ... and draw[ ] the ultimate conclusion as to the facts." Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). We are satisfied that the evidence was sufficient to support the verdict.
 
 
 14
 As another ground for reversing the denial of the JNOV, Ekelin contends that accord and satisfaction should have barred as a matter of law any recovery by Callahan. Ekelin bases this argument on Callahan's signing of various releases and change orders that purported to settle all claims related to work performed by Callahan up to the time of signing.
 
 
 15
 Assuming that accord and satisfaction were properly raised as an affirmative defense, a matter which Callahan contests, we conclude that the issue became a factual dispute between the parties that the jury resolved in Callahan's favor. Under California law, economic duress can serve as a basis for invalidating a release or waiver. Rich & Whillock, Inc. v. Ashton Dev., Inc., 157 Cal.App.3d 1154, 204 Cal.Rptr. 86 (1984). This doctrine applies when the releasee commits a wrongful act sufficiently coercive to compel the releasor to sign the release or face financial ruin. Id., 204 Cal.Rptr. at 89. See also Sheehan v. Atlanta Int'l Ins. Co., 812 F.2d 465, 469 (9th Cir.1987).
 
 
 16
 The parties made the issue of the releases and economic duress a prominent part of their cases. They addressed it in their opening and closing arguments, elicited witnesses' testimony in relation to it, argued it in Ekelin's directed verdict motion, and agreed to a jury instruction covering it. We conclude that Callahan put on enough evidence about his economic situation and Ekelin's behavior to survive a directed verdict and to support a finding of economic duress. Consequently, Ekelin was not entitled to a JNOV based on accord and satisfaction.
 
 III.
 
 17
 Ekelin, in its last argument, challenges the district judge's decision not to give four proposed instructions to the jury. Fed.R.Civ.P. 51 provides that "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."
 
 
 18
 Our review of the record reveals that both parties offered instructions and the judge went through those offered instructions, hearing objections and stating his reasons why he intended to give or not to give the instructions. Although Ekelin's counsel offered the four proposed instructions and heard the reasons why the judge declined to give them, no objection was made to the failure to give them in compliance with Rule 51. The objections were made for the first time in the motion for new trial. We have recognized one exception to the requirement of strict compliance with Rule 51. That exception is when it is obvious that in the process of settling the jury instructions the court was made fully aware of the objections of the party and the reasons therefor and further objection would be unavailing. In that limited circumstance, we have not required the pointless formality of a specific objection. See Brett v. Hotel, Motel, Restaurant, Const. Camp Employees and Bartenders Union, Local 879, 828 F.2d 1409, 1414 n. 7 (9th Cir.1987). The record in this case does not justify the application of that exception. Ekelin has failed to preserve the issue of the rejected jury instructions.
 
 IV.
 
 19
 We next turn to Callahan's contention that he should have been awarded the full request for attorneys' fees. While attorneys' fees awards are generally reviewed for abuse of discretion, Mitchell v. Keith, 752 F.2d 385, 392 (9th Cir.), cert. denied, 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985), we confront here a question involving the district court's application of law to the fees request. Whether the trial court applied the correct legal standard is an issue of law properly reviewed de novo. See Southerland v. International Longshoremen's and Warehousemen's Union, Local 8, 845 F.2d 796, 799 n. 3 (9th Cir.1987); cf. Perry v. O'Donnell, 759 F.2d 702, 704 (9th Cir.1985) (district court interpretation of judicial exception to attorneys' fees law reviewed de novo ).
 
 
 20
 As the district court recognized, the Supreme Court's decision in F.D. Rich serves as the starting point for consideration of attorneys' fees in Miller Act cases. In F.D. Rich, the Court confronted a decision by this circuit which authorized fees in a Miller Act bond suit on the basis of the forum state's "public policy." F.D. Rich, 417 U.S. at 126, 94 S.Ct. at 2163. The Court reversed, holding that federal, not state, law should govern the award of fees in this context. Id. at 127, 94 S.Ct. at 2164. Under federal law, the so-called American Rule of fees applies. Fees are available only when authorized by statute or an enforceable contract or, in the absence of either of these sources, when the losing party has acted in bad faith or the successful party has conferred a substantial benefit on a class of individuals. Id. at 126, 129-30, 94 S.Ct. at 2165-66; United States ex rel. Youngstown Welding and Eng'g Co. v. Travelers Indem. Co., 802 F.2d 1164, 1166 (9th Cir.1986). The Court noted that the Miller Act itself does not provide for fees. F.D. Rich, 417 U.S. at 126, 94 S.Ct. at 2163.
 
 
 21
 Callahan presents an issue not directly addressed by F.D. Rich. In that case, the Court dealt with a situation in which there was no provision for attorneys' fees in the construction contract. The Court's holding was limited to the question of whether the prevailing party was entitled to attorneys' fees absent a contractual provision for them. In this case, we deal with a specific fees clause in the Ekelin-Callahan subcontract. We are thus concerned here with the contract exception to the American attorneys' fees rule.
 
 
 22
 Our task, then, becomes one simply of construing the contract according to the applicable body of law. Our circuit has long held that state law controls the interpretation of Miller Act subcontracts to which the United States is not a party. United States ex rel. Bldg. Rentals Corp. v. Western Casualty and Sur. Co., 498 F.2d 335, 338 n. 4 (9th Cir.1974) (listing Ninth Circuit cases applying state law to these subcontracts).[5] Like a court sitting in diversity, we use the law of the forum state to construe the agreement. The contract here, therefore, should be interpreted according to California state law.
 
 
 23
 Read through the lens of California law, the contract authorizes the award of a full measure of attorneys' fees to Callahan. Callahan's interpretation of Cal.Civ.Code Sec. 1717 is correct. That statute's reciprocity rule converts a one-way attorneys' fees clause into a two-way avenue of opportunity. Lafarge Conseils et Etudes v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1339 n. 15 (9th Cir.1986); Reynolds Metals Co. v. Alperson, 25 Cal.3d 124, 158 Cal.Rptr. 1, 3, 599 P.2d 83, 85 (1979). It creates a reciprocal fees provision no matter how unilateral the wording of the contract. Wilson's Heating and Air Conditioning v. Wells Fargo Bank, 202 Cal.App.3d 1326, 249 Cal.Rptr. 553, 557 (1988). In this case, the fact that the subcontract expressly limits the availability of fees to the contractor is of no effect. Section 1717 makes the clause as applicable to Callahan as it is to Ekelin.
 
 
 24
 Ekelin argues that section 1717 should not apply because the contract provides for fees only in the limited circumstance of indemnification for completion of unfinished work, and not in general actions on the contract. Ekelin relies heavily on a California state appellate opinion, Meininger v. Larwin-Northern Cal., Inc., 63 Cal.App.3d 82, 135 Cal.Rptr. 1 (1976), for this position. In Meininger, the appellate court addressed the attorneys' fees implications of an indemnity clause in a subcontract. The clause stated that the subcontractor would indemnify the contractor for all expenses, including attorneys' fees, incurred by the contractor as a result of damage to person or property caused by the subcontractor. Id., 135 Cal.Rptr. at 2. Meininger, the subcontractor, sued the contractor on a breach of contract theory entirely unrelated to the indemnity clause. Affirming the trial court's denial of fees, the appellate court read section 1717 to mean that a fees clause must specifically provide for fees in an action on the contract before the section applies. Id. It held that the indemnification clause's plain language limited the availability of fees to the narrow context of damage expenses incurred by the contractor. The court concluded that section 1717, consequently, did not come into play.
 
 
 25
 While Meininger lends some support to Ekelin's argument, its central proposition is no longer good law. A few years after Meininger, another California appellate case, Sciarrotta v. Teaford Const. Co., 110 Cal.App.3d 444, 167 Cal.Rptr. 889 (1980), took up Meininger 's refrain. In Sciarrotta, the court rejected attorneys' fees for a successful plaintiff who had sued to enforce a right under a building contract unrelated to the situations covered by the contract's fees clause. The court relied in part on Meininger to reach this conclusion. Id., 167 Cal.Rptr. at 892. In 1983, the California legislature amended section 1717 to read, "[w]here a contract provides for attorney's fees ... such provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." Cal.Civ.Code Sec. 1717(a) (West 1985) (emphasis added). The legislature intended this amendment to counter the restrictive readings of fees clauses in Sciarrotta and allied cases. Boyd v. Oscar Fisher Co., 210 Cal.App.3d 368, 258 Cal.Rptr. 473, 479 (1989); 7 B. Witkin, California Procedure, Judgment Sec. 152 (3d ed.). The current rule mandates an award of fees in any action relating to a contract no matter how restrictive the language in the attorneys' fees clause, unless the specified conditions exist. See Boyd, 258 Cal.Rptr. at 479-80. We find no evidence in the record that suggests the exception to section 1717 should apply. Ekelin's reliance on Meininger is misplaced.
 
 
 26
 In light of these considerations, we reverse the district court's partial fee award. We remand for the trial court to award reasonable attorneys' fees for all of Callahan's case, including fees related to this appeal.
 
 V.
 
 27
 We reverse and remand the attorneys' fee ruling for reconsideration in accordance with this opinion. We affirm all other aspects of the judgment.
 
 
 28
 AFFIRMED IN PART, REVERSED and REMANDED IN PART.
 
 
 
 [1]
 In the course of this suit, Ekelin changed its name to Esto, Inc. We will refer to Ekelin by its original name throughout this opinion
 
 
 [2]
 Callahan filed for bankruptcy under Chapter 11 in 1983. In 1985, about five months before trial of the Miller Act case, the bankruptcy court converted the Chapter 11 filing to Chapter 7
 
 
 [3]
 Section 1717 states in relevant part:
 [I]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
 Where a contract provides for attorney's fees, ... that provision shall be construed as applying to the entire contract....
 
 
 [4]
 As a preliminary matter, Ekelin raises for the first time a question about Callahan's position as the real party in interest. All suits in federal court must be brought in the name of the real party in interest. Fed.R.Civ.P. 17. Ekelin contends that the conversion of Callahan's Chapter 11 petition to a Chapter 7 proceeding, see note 2, supra, left only the Chapter 7 trustee with the right to sue as the real party. We do not decide that question because we find that Ekelin waived this objection by failing to raise it in a timely manner. Hefley v. Jones, 687 F.2d 1383, 1388 (10th Cir.1982); Chicago and Northwestern Transp. Co. v. Negus-Sweenie, Inc., 549 F.2d 47, 50 (8th Cir.1977) (real party objection should be voiced during trial court proceedings). Ekelin states that it waited until now to raise the issue because it relied upon representations by Callahan's counsel that the real party problem had been corrected. Assuming such a representation was made, Ekelin chose to depend on it at its own risk. We will not upset the jury verdict and judgment on the basis of this belated argument
 
 
 [5]
 For reasons unrelated to Rich, choice of law in this area is a point of some debate among the circuits. See United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, 834 F.2d 1533, 1539 n. 2 (10th Cir.1987)