UNITED STATES of America,
Plaintiff–Appellant,

v.

The PARSONS CORP., Defendant–
Appellee.

UNITED STATES of America,
Plaintiff–Appellee,

v.

The PARSONS CORP., Defendant–
Appellant.

Nos. 90–56328, 90–56329.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 17, 1992.

Decided Aug. 6, 1993.

Stan Blumenfeld, Asst. U.S. Atty., Los Angeles, CA, for U.S.

Scott A. Edelman and Kevin S. Rosen, Gibson, Dunn & Crutcher, Los Angeles, CA, for Parsons.

Before: WIGGINS, KOZINSKI and KLEINFELD, Circuit Judges.

KOZINSKI, Circuit Judge:

The Department of Energy (DOE) loaned $99.6 million to two subsidiaries of the Parsons Corporation so they could develop a geothermal power plant. *See* The Geothermal Loan Guaranty Program, 10 C.F.R. pt. 790 (1990). In return, Parsons guaranteed it would pay DOE up to $3 million if its subsidiaries defaulted. A year later that's what happened: The project collapsed, the borrowers defaulted and the government came looking for its money. At trial, Parsons managed to convince a jury that an escape clause in its guarantee agreement let it off the hook for the $3 million. The government appeals, claiming the district court asked the jury the wrong questions and the jury gave

wrong answers to the questions it was asked. Parsons also appeals, claiming it's entitled to collect its attorney's fees from the government.

## Discussion

1. The United States challenges the special verdict form and jury instructions. It claims that even though it failed to object at trial as required by Fed.R.Civ.P. 51, it should nonetheless be able to appeal because the district court was fully aware of its position. The government says a formal objection would have been redundant. *United States ex rel. Reed v. Callahan,* 884 F.2d 1180, 1184 (9th Cir.1989). *See also Brown v. Avemco Inv. Corp.,* 603 F.2d 1367, 1371, 1373 (9th Cir.1979).

Did the government object here in all but name? The trial judge read paragraph 2(b)(v)[1] (the escape clause in the guarantee agreement) as posing three issues for the jury to address. The government would have preferred that the verdict form consist of five questions, but acknowledged that the court had just collapsed the five issues into three. RT 6/07/90 at 118. DOE appeared to accede to the three-part verdict form:

> [COUNSEL FOR DOE]: ... So if there's a no to any one of these three [special verdict questions], we win?
> THE COURT: Well, if there's a no to any one of those three, [Parsons doesn't] come under 2(b)(v).
> [DOE]: Yeah.
> THE COURT: Whether you win depends on some other things. But still you don't come under 2(b)(v).
> [DOE]: Okay.

RT 6/07/90 at 108. DOE counsel's most vehement protest was a doe-like, "I'm thinking that it's just easier to go through my five-point checklist, Your Honor." RT 6/07/90 at 121. While the government made clear that it would have liked a different instruction than that formed by the district court, government counsel did not tell the court that it

would be committing an error of law or an abuse of discretion if it did not adopt the government's approach. Thus, while the court was aware of DOE's preferences, it's hardly the case that DOE objected in all but form. *See Lifshitz v. Walter Drake & Sons, Inc.,* 806 F.2d 1426, 1431 (9th Cir.1986).

■ The United States says an objection would only have told the judge what he already knew—that the government thought the court should use a five-point checklist. But it's one thing to tell the district judge your preferences, and quite another to object when he disregards them. District judges do a thousand things that call for the exercise of discretion, the wording of jury instructions being only one among them. One of the lawyer's functions is persuading the court to exercise its discretion in a way favorable to the client. Another quite different function is keeping the judge from straying outside the ambit of his discretion by pointing out errors of law. District judges are more likely to correct errors if they are aware the lawyer is raising legal objections, not just quibbling about matters within the court's discretion. So, in order to comply with Rule 51, it's not enough for an attorney to make a suggestion that the Court turns down. He must also make it clear that he believes the judge has erred as a matter of law. This the DOE attorney did not do.

■ 2. Next, the government asks us to set aside the jury's verdict as unsupported by substantial evidence. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1013–14 (9th Cir.1985). The overriding issue at trial was which side caused the project's collapse and the ensuing default. Parsons took the position that DOE was to blame because it unreasonably delayed approval of Parsons' work on the second phase of the project and thus delayed funding. According to Parsons, DOE knew the delays would doom the project by (among other things) choking off its cash flow and killing a crucial energy purchase contract. Parsons' story

---

1. Paragraph 2(b)(v) is a mouthful. It releases Parsons from liability for its subsidiaries' default if the default "arises out of or results from action or inaction by any federal governmental agency or authority (except for federal action or inaction which by the exercise of due diligence by [Parsons' subsidiaries] could have been avoided or ... overcome and except for action or inaction permitted to DOE or the Servicing Agent by the Loan Documents) which ... causes or results in prolonged delays sufficient to render the Project, in the opinion of both DOE and [Parsons], no longer either technically or economically viable." ER 538.

was amply supported by expert testimony. ER 365–367.

As for the particulars of the special verdict, a jury could reasonably have inferred that DOE didn't approve Parsons' work because it didn't think the project was economically feasible. A jury could also reasonably conclude that no amount of due diligence by Parsons could have prevented DOE's stalling. Parsons had put DOE on notice of its precarious economic condition, and nothing in DOE's agreement with Parsons let the government impose such delays on the project as DOE did here. The record supports the jury's finding that the project collapsed because of government inaction not permitted by the loan documents, and that paragraph 2(b)(v) thus released Parsons from its guarantee.

3. The government also claims the district court misread the project's requirements. Each "milestone" in the project consisted of specific "tasks" (like drilling a well) and more general "objectives" (like confirming "that a suitable remote injection site exists"). ER 529. DOE thinks Parsons should have had to complete both the tasks and the objectives; the court said that Parsons just had to do the tasks. DOE argues that the court's reading of the contract leaves no work for the "objectives" to do, and that we should prefer its reading, which makes sense of every part of the contract.

We do not agree, however, that the district court's reading makes the objectives superfluous. The objectives were for DOE to use in deciding whether to keep funding the project. DOE was entitled to pull the plug any time Parsons failed to achieve the objectives attached to a milestone. But only if Parsons failed to complete the tasks could the government collect on the $3 million guarantee. The court told the jury it could consider the objectives when interpreting what the tasks meant. This reading of the contract is supported by the evidence and is correct as a matter of law.

4. Finally, having lost on the merits, is the government obliged to pay Parsons' attorney's fees? The guarantee agreement says:

If DOE ... is required to pursue any remedy against [Parsons], [Parsons] shall pay upon demand, all fees and expenses of their counsel and all other related costs incurred by them in connection therewith.

ER 541. At first this looks like a one-way street going the wrong way for Parsons. But the obligations become reciprocal if they're read in light of California Civil Code section 1717, which "converts a one-way attorneys' fees clause into a two-way avenue of opportunity." *Callahan,* 884 F.2d at 1185. So the tough question is, does California law apply?

The contract has a choice of law provision: This Guarantee shall be governed by and construed in accordance with the laws of the State of California, except to the extent that ... DOE would be entitled to greater rights under federal law.

ER 543. The meaning of "federal law" here is a bit of a puzzle; there's no federal statute akin to section 1717. Parsons argues that, when faced with federal silence, we should listen to state law; "greater rights under federal law" have to take the form of affirmative federal legislation. The government argues that, while California doesn't let parties shift fees in one direction only, nothing in federal law stops them from doing so: The government is better off under federal law than under California law, so Parsons must pay its own way.

█ The government has the better of this argument. To begin with, federal law is not totally silent on the subject of fee awards against the government:

The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b). Parsons contends that "any statute" is an arrow pointing back to section 1717 of the California Code. But "any statute" refers only to federal statutes. *Olson v. Norman,* 830 F.2d 811, 822 (8th Cir.1987); *Joe v. United States,* 772 F.2d 1535, 1537 (11th Cir.1985). The question left open under section 2412 is what the common law would require.

Federally recognized common law uses the American rule (each side pays its own costs)

as a background presumption. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 269–71, 95 S.Ct. 1612, 1627–29, 44 L.Ed.2d 141 (1974); *Perry v. O'Donnell,* 759 F.2d 702, 704 (9th Cir.1985). There are some common law exceptions to the American rule (in cases of bad faith, for instance), *see Perry,* 759 F.2d at 704; none of them was argued here and none apply. Federal courts also have been known to recognize different fee arrangements when parties draft them. *See United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.,* 834 F.2d 1533, 1546 (10th Cir.1987). But again, there remains no federal counterpart to California Civil Code section 1717. If we read the contract through the lens of federal law rather than California law, we enforce it the way it's written: as a one-way street.

Because the government is better off under federal law than under California law, federal law it is. Since Parsons wins on the principal appeal but the government wins on the cross-appeal, each side shall bear its own costs.

**AFFIRMED.**