Linda JOHNSON, Plaintiff–Appellant,

v.

**PARADISE VALLEY UNIFIED SCHOOL DISTRICT,**
Defendant–Appellee.

No. 99–17530.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 2000

Filed May 24, 2001

---

---

Rosemary Cook, Phoenix, Arizona, for the plaintiff-appellant.

Gary L. Lassen and Kimberly J. Cilke, Jennings, Strouss & Salmon, Phoenix, Arizona, for the defendant-appellee.

Before: KOZINSKI, HAWKINS, and BERZON, Circuit Judges.

BERZON, Circuit Judge:

After prevailing in a jury trial on her claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, against Paradise Valley School District ("District"), Linda Johnson appeals from the district court's order granting judgment as a matter of law to the District and conditionally granting the District's motion for a new trial. We reverse.

## BACKGROUND

### A. *The Evidence Favorable to Johnson*

The jury heard the following evidence at trial, some of which was contradicted by other evidence and some of which was not:

Linda Johnson was employed by the District from August 1982 to May 1996. From her date of hire to July 27, 1987, Johnson held the position of Custodian I. She was promoted to Groundskeeper I and served in that capacity from July 27, 1987 to April 13, 1989. Johnson was then promoted to Groundskeeper II, a position she held until her resignation on May 14, 1996.

Johnson was severely injured on the job on July 9, 1995. A golf cart crushed Johnson's leg, and she suffered a "degloving" injury—that is, an injury in which skin, muscle, and nerve tissue on the leg were pulled away from the bone. Johnson underwent surgery to repair the damaged nerve tissue, connective tissue, and skin, and was able to return to work from September 1995 to December 1995. In December, Johnson's doctor placed her on "no work" status because she was suffering persistent pain and swelling in her injured leg.

Johnson thereupon met with the District's Director of Employment, Dr. Teri Traaen, and presented her with her doctor's note. Johnson's leg injury was visible during this meeting because Johnson was wearing shorts. Johnson described the injury to Traaen, telling her that: "the electric cart crushed my leg and tore the skin, muscle, and all the tissue off my leg.

I[am] on crutches . . . to keep weight off my foot because it was swelling." Johnson told Traaen that she was in constant pain, and that due to her injury, she did not know "if and when" she would ever be able to return to work.

Traaen testified at trial that Johnson "truly did look like she was in constant pain," that Johnson had indicated that she did not know if she could ever work again, and that Traaen had no reason to doubt Johnson's statement regarding her future work prospects.

On February 5, 1996, Johnson received a release from her doctor that allowed her to return to work with the following restrictions: "No prolonged standing, no prolonged walking, allow frequent changes in position." Johnson met with Traaen and gave her the limited release. Johnson testified that Traaen told her that she could not return to work under the limited release, because "we don't take limited releases." Traaen denied ever having told any employees, including Johnson, that they would be terminated if they could not obtain a full release, but the jury heard from two other District employees, Dan Gallagher and Jay Brewer, each of whom testified that they had suffered injuries, and that Traaen had refused to permit them to return to work with limited releases and told them that unless they could obtain full releases they would be terminated.

District policy permitted Johnson 100 days of unpaid leave, commencing after her last day of work. On May 13, 1996, after Johnson's 100 days had expired, Johnson met with Traaen and Eileen Holusha, the benefits administrator for the District, and, according to Johnson, was told that she had to choose between resigning or being fired. At that time, Johnson testified, she asked for a one-year leave of absence to recuperate from her injury, or, in the alternative, for permission to use her approximately 23 days of unused vacation and sick leave to defer her date of decision in hope of obtaining a full release from her doctor. Although District policy dictated that the latter request should have been granted, Traaen denied both requests and encouraged Johnson to resign, suggesting that a resignation might look better on her resume than a termination. Traaen stated that if Johnson obtained a full release after resigning, she could apply for another job, and offered to write a recommendation letter for Johnson if she resigned.

Three witnesses corroborated Johnson's story. All three testified that Johnson had tearfully told them on May 13, 1996, that she had just spoken with Traaen and had been told that she had to resign or be fired.

The day after the May 13, 1996 meeting, Johnson submitted a letter of resignation. Three weeks later, on June 3, 1996, Johnson received a full release from her doctor. On July 10, 1996, Johnson applied for an open position of Groundskeeper I and was not hired. In the succeeding several months, Johnson applied for 12 more open positions and was not interviewed or hired for any of them. Each of Johnson's applications was marked "DNP," an acronym for "do not process," by a District administrator.

Traaen testified that she was involved in the decision to mark Johnson's applications DNP, and that they were so marked because of an incident in which Johnson came to Traaen's office angry over not being hired for a position (the "rage incident"), and because Johnson had had attendance problems during her fourteen years with the district.

Johnson's account of her meeting with Traaen on the day of the alleged rage incident was very different from Traaen's. Johnson testified that she went to meet

Traaen, waited for about 90 minutes in the reception area, and was then called into Traaen's office and left alone for several minutes. When Traaen returned, according to Johnson, she told Johnson, "This meeting is over. Leave." Johnson left. Moreover, Traaen conceded on cross-examination that the rage incident postdated Johnson's first application, which, like the later ones, was marked DNP. Traaen also conceded that Johnson had never been disciplined for her attendance "problems," and that her performance evaluations were uniformly positive in all categories other than attendance. The jury also saw Johnson's fourteen annual performance evaluation forms, which revealed that the attendance issue was discussed on the two evaluations immediately preceding Johnson's two promotions, in 1987 and 1989.

## B. *Proceedings below*

Johnson filed this ADA case in February 1997, alleging that the District discriminated against her because she was disabled, in violation of 42 U.S.C. § 12102(2)(A), and because the District regarded her as disabled, in violation of 42 U.S.C. § 12102(2)(C).[1] District Judge Bruce M. Van Sickle granted summary judgment on Johnson's § 12102(2)(A) claim, finding that Johnson did not, as a matter of law, suffer from a physical impairment that substantially limited her in any major life activity. Judge Van Sickle denied the District's motion for summary judgment as to the § 12102(2)(C) claim, however, finding that there was sufficient evidence to proceed to trial on Johnson's claim that the District discriminated against her because it regarded her as disabled. This claim was tried to a jury before Judge Van Sickle in February 1999.

At trial, Johnson challenged four distinct adverse actions by the District, all of which, she alleged, had occurred because the District regarded her as disabled: the refusal to allow Johnson to return to work without a full release; her forced resignation; the refusal to allow her to extend her leave of absence by using her accumulated vacation and sick time, in alleged violation of District policy; and the failure to consider her subsequent applications for open positions.

At the close of plaintiff's case, the District moved for judgment as a matter of law, arguing that Johnson had introduced no evidence in support of her claim that the District regarded her as disabled. Judge Van Sickle denied the motion. After deliberation, the jury returned a verdict in Johnson's favor and awarded her $237,345.

After the verdict, the District filed a renewed motion for judgment as a matter of law.[2] Judge Van Sickle thereupon determined that he was unable to continue to preside over the case, and the case was reassigned to a different district judge, Judge John W. Sedwick. Judge Sedwick proceeded to hear, and then granted, the District's renewed motion for judgment as a matter of law, and also heard and condi-

---

1. The ADA prohibits employers from discriminating "against a qualified individual with a disability because of" that disability. 42 U.S.C. § 12112(a). A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). A person has a "disability" within the meaning of the ADA if she "(A) [has] a physical or mental impairment that substan-

tially limits one or more of the major life activities of such individual; (B) [has] a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. §§ 12102(2)(A)-(C).

2. The District's motion was based on the contention that Johnson had not introduced evidence that the District regarded her as disabled. Accordingly, our discussion is confined to the evidence on this point.

tionally granted the District's alternative motion for a new trial. Johnson appeals Judge Sedwick's grant of judgment as a matter of law on her "regarded as disabled" claim, arguing that there was sufficient evidence for the jury to conclude that the District regarded her as disabled, and his conditional grant of a new trial, arguing that Judge Sedwick abused his discretion because the jury's verdict was not against the overwhelming weight of the evidence. We agree on both issues.

## DISCUSSION

### A. Legal framework

"There are two apparent ways in which individuals may fall within [the 'regarded as disabled' provision of the ADA]: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines,* 527 U.S. 471, 489, 119 S.Ct.

2139, 144 L.Ed.2d 450 (1999). Here, Johnson's claim was that the District regarded her as disabled from the major life activities of walking, working, or standing.[3]

### B. Sufficiency of the evidence

Viewing the evidence in the light most favorable to Johnson, *Ace v. Aetna Life Ins. Co.,* 139 F.3d 1241, 1246 (9th Cir. 1998), and reviewing *de novo* the district court's grant of the motion for judgment as a matter of law, *Gilbrook v. City of Westminster,* 177 F.3d 839, 864 (9th Cir. 1999), we hold that the evidence was quite sufficient to support the jury's verdict.

In granting the District's motion for judgment as a matter of law, the district court summarized the evidence discussed above and explicitly recognized that "standing in isolation [the evidence before the jury] might be said to support an inference that Traaen believed Johnson was disabled within the meaning of the ADA." Nonetheless, the court granted the District's motion. It did so only after

---

**3.** Where the major life activity in question is working, to establish that she was "regarded as disabled" an employee must show that her employer wrongly believed that she possessed an impairment or degree of impairment that, if she actually was so impaired, would qualify her as disabled from working under the objective definition of "disability" contained in § 12102(2)(A). *See Deppe v. United Airlines,* 217 F.3d 1262, 1265 (9th Cir.2000) ("In 'regarded as' cases, the employer must perceive the individual as having an actual disability under the ADA."); *see also* 29 C.F.R. § 1630.2(j)(3)(i) (stating that to show a substantial limitation in the major life activity of working, an employee must show that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes").

As the Supreme Court has noted, to recognize "working" as a major life activity raises various logical conundra. *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. The mind-bending problems are exacerbated where, as here, the claim is not that the plaintiff *is* disabled from

working, but that she is wrongly *regarded as* disabled from working: Does that mean that the employer must subjectively believe that the plaintiff cannot work at a class or broad range of jobs? Why would an employer ordinarily form any view on whether an employee is disabled from performing jobs for other employers? Are we therefore to concern ourselves only with the question whether, if the employee was as impaired as the employer thought, she would, as an objective matter, be unable to perform a class or broad range of jobs? Neither *Deppe* nor any other case of this court resolves these confounding issues.

For purposes of this case, though, we can leave these puzzles aside. The District stipulated to jury instructions that define "substantially limited," with respect to working and all other major life activities, in general terms, and did not spell out the "class of jobs or broad range of jobs" requirement. The District has therefore failed to preserve any issue concerning the application of that requirement to the facts of this case.

independently weighing the evidence favorable to Johnson against other evidence presented at trial, and concluding, based on its consideration of "all the evidence at trial, [that] this evidence is not such that reasonable people could find it adequate to support the conclusion that Traaen—and through her the District—regarded Johnson as disabled." The district court's approach was error.

■■■ A jury's verdict must be upheld if it is supported by substantial evidence. *Gilbrook*, 177 F.3d at 856. Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence. *Id.* Thus, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000), and may not substitute its view of the evidence for that of the jury. *Gilbrook*, 177 F.3d at 856.

■■■ In light of these bedrock principles delineating the trial judge's limited role in reviewing a jury's factual findings, the district court's conclusion that "standing in isolation [the evidence before the jury] might be said to support an inference that Traaen believed Johnson was disabled

within the meaning of the ADA" should have ended that court's inquiry. That there was also evidence favorable to the District was simply not relevant, since the jury was free to disbelieve, and therefore to disregard, that evidence. *See id.* More specifically, "in entertaining a motion for judgment as a matter of law … the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* The district court erred by drawing a number of inferences, and making credibility determinations, in the District's favor.

First, Traaen testified that she was accustomed to relying on medical opinion. The district court credited this statement and found that this testimony undercut the jury's apparent inference that, in forming her own opinion, Traaen relied on Johnson's statement that she did not know if or when she would ever work again. "It is not the province of a court to spin such evidence in an employer's favor when evaluating its motion" for judgment as a matter of law.[4] *Chuang v. University of California*, 225 F.3d 1115, 1129 (9th Cir.2000).[5]

Second, the district court found that Johnson's statement to Traaen regarding whether she would ever return to work was ambiguous, in that it could have signified inability to resume only the job she

---

4. Similarly, the district court was not entitled to rely, as it apparently did, on an unstated assumption that Traaen assessed Johnson's degree of physical impairment by considering all the evidence marshaled in the district court opinion tending to show that Johnson was not disabled. The court, for instance, emphasized the fact that Johnson had received a full release by the time the District began marking her applications DNP as evidence that the District must not have regarded her as disabled. This evidence was, however, irrelevant to Traaen's beliefs at the earlier point at which three of the four allegedly discriminatory acts occurred. And even with respect to the fourth

allegedly discriminatory act—the refusal to consider Johnson's applications—there is no reason that the jury was required to conclude that Traaen believed and acted upon the doctor's views concerning Johnson's ability to work.

5. Although *Chuang* is a summary judgment case, "[t]he standard for granting a summary judgment is equivalent to the standard for granting a judgment as a matter of law under Fed.R.Civ.P. 50." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1121 (9th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

held at the District and not a "class or broad range of jobs," as required to show a substantial limitation on the major life activity of working. *See Sutton,* 527 U.S. at 492–93, 119 S.Ct. 2139. As noted above, however, the jury instructions contain no discussion of the class or broad range of jobs requirement, and the District may not now challenge the instructions, having stipulated to them at trial.

Moreover, there is substantial other evidence from which the jury could have concluded that the District regarded Johnson as disabled from a class or broad range of jobs. That evidence includes the undisputed fact that the District refused to consider her for thirteen different maintenance and groundskeeping jobs. It also includes the testimony that the District enforced a policy of refusing to accept "partial releases" for employees in any job category; that policy supports an inference that the District regarded Johnson, and other injured employees, as unable to perform any job. *See McGregor v. National R.R. Passenger Corp.,* 187 F.3d 1113, 1116 (9th Cir.1999) ("A '100% healed' or 'fully healed' policy discriminates against qualified individuals with disabilities because such a policy permits employers to substitute a determination of whether a qualified individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without accommodation.") (citations omitted).

Third, the district court relied impermissibly on inferences in the District's favor from two remarks that Traaen made to Johnson in the course of their May 13 meeting. Johnson testified that, after Traaen encouraged her to resign by telling her it would look better on her resume than being fired, Traaen said "maybe you'll get a release, and you can apply for another job," and offered to write Johnson a letter of recommendation. The district court improperly viewed these remarks in the light most favorable to the District, *see Gilbrook,* 177 F.3d at 847–48, as evidence that Traaen *sincerely* believed Johnson was employable, and was not, therefore, disabled. But the jury could reasonably have inferred instead that Traaen was trying to induce Johnson's resignation, rather than expressing a belief that Johnson was not disabled. Further, Traaen's statement at best suggested that Johnson might become employable in the future, and is therefore of little relevance on the question whether Traaen viewed Johnson as disabled at the pertinent times.

Finally, with respect to Johnson's thirteen applications for maintenance and groundskeeping jobs with the District, the district court took at face value Traaen's explanations for the fact that Johnson's applications were marked DNP, although there was evidence (including the timing of the first rejection and the history of Johnson's positive job evaluations despite her attendance problems) from which the jury could have concluded that the explanations were pretextual.

Indeed, Traaen's arguably pretextual explanations themselves could appropriately be considered as affirmative evidence of the District's motivation in rejecting Johnson's applications. As the Supreme Court recently remarked:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.... In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a

material fact as affirmative evidence of guilt.

*Reeves*, 120 S.Ct. at 2108. Similarly, finding pretextual an explanation for an adverse employment action can affirmatively support the conclusion that the employer was dissembling to cover up the fact that it regarded the employee as disabled.

The district court's conclusion, in short, depended on that court's improper usurpation of the jury's basic factfinding authority, including the authority to draw inferences from the facts established and to believe some witnesses but not others. Although the evidence was far from overwhelming, and the jury was not compelled to conclude that Traaen regarded Johnson as disabled, neither can it be said that the jury's conclusion to that effect was unsupported by substantial evidence.

■ Further, while the district court's approach to deciding the motion for judgment as a matter of law would have been improper whatever the nature of the underlying cause of action, it was particularly improper after an ADA "regarded as disabled" trial. Although Traaen's apparent belief that Johnson was disabled was based on flimsy evidence—given that Johnson was not, in fact, disabled—Johnson was not required to show that Traaen's opinion was well-founded. To the contrary, Johnson's "regarded as disabled" cause of action rested on the assertion that the District was acting irrationally, rather than on the basis of the true facts and rational economic calculation. *See Sutton*, 527 U.S. at 490, 119 S.Ct. 2139 ("the purpose of the

regarded as prong is to cover individuals rejected from a job because of the myths, fears and stereotypes associated with disabilities") (quoting 29 CFR pt. 1630, App. § 1630.2(*l*)). Given the context, dissecting the evidence before Traaen to show that, as reasonably interpreted, it demonstrated that Johnson was *not* disabled, was a task of no pertinence to the substantial evidence question before the district court on the District's motion for judgment as a matter of law.[6]

## C. *New Trial*

■ The district court granted respondents' motion for a new trial on the ground that the verdict was against the weight of the evidence. The grant or denial of a motion for a new trial is typically reviewed for an abuse of discretion. *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987). Nonetheless, "a stringent standard applies when the motion is based on insufficiency of the evidence. A motion for a new trial may be granted on this ground only if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result." *Id.* at 1519 (citations omitted).

Normally we are quite deferential to the district court in these matters. *See United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir.1999); *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). The question may be different, however, when, as in our case, the district judge who granted the new trial motion

6. The District asserted at oral argument that Johnson cannot prevail without direct evidence that the District regarded Johnson as disabled. There is language in the opinion of the district court that suggests that that court also believed that direct evidence of the District's beliefs or motives was required. That is not the law. In employment cases, "[a]s in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence." *United*

*States Postal Service v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Indeed, where the trier of fact must determine the employer's state of mind, "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." *Id.* at 716–17, 103 S.Ct. 1478. Thus, direct evidence of state of mind is not required to prove that an employer regarded an employee as disabled.

did not preside over the jury trial. *Compare Bankcard America, Inc. v. Universal Bancard Sys., Inc.,* 203 F.3d 477, 481 (7th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 186, 148 L.Ed.2d 128 (2000) (no deference to successor judge), *with Langevine v. District of Columbia,* 106 F.3d 1018, 1023 (D.C.Cir.1997) (the new judge's ruling, "like any ruling on a motion for a new trial, is reviewed for abuse of discretion"). *Cf. Canseco v. United States,* 97 F.3d 1224, 1227 (9th Cir.1996) (we review the successor judge's ruling after a bench trial for abuse of discretion).

We need not decide what standard would apply here because even under the more deferential standard, we conclude that the district court's grant of a new trial was infected by errors similar to those that infected its entry of judgment as a matter of law: The district court relied on its virtually *de novo* assessment of the evidence, substituting its own inferences and credibility determinations for those of the jury. In other words the district court concluded only that the jury verdict was, on the court's own assessment of the evidence, wrong; the court never determined that the jury's contrary view was "against the *great* weight of the evidence or ... *seriously* erroneous." *Venegas,* 831 F.2d at 1519 (emphasis added). So, the district court applied the wrong standard and thereby abused its discretion. Further, for the reasons discussed above, we believe that any finding that this "stringent standard" was met, on this record, would be an abuse of discretion. Accordingly, we REVERSE the conditional grant of the District's motion for a new trial.

REVERSED in all respects and REMANDED to the district court for entry of judgment consistent with the jury verdict.