**FLYING J, INC., a Utah corporation, Plaintiff—Appellee,**

v.

**CENTRAL CA KENWORTH, a California corporation; Tommy G. Pistacchio, Defendants—Appellants,**

and

**Ron Daggett, dba Daggett and Assoc.; Doy Gattlin, Defendants.**

*States v. Montano,* 250 F.3d 709, 713 (9th Cir.2001).

Flying J, Inc., a Utah corporation,
Plaintiff—Appellant,

v.

Central Ca Kenworth, a California corporation; Tommy G. Pistacchio; Ron Daggett, dba Daggett and Assoc.; Doy Gattlin, Defendants—Appellees.

Nos. 00–17290, 00–17336.
D.C. Nos. CV–95–05030–REC–LJO, CV–95–05030–LJO.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2002.

Decided Sept. 3, 2002.

Before D.W. NELSON, NOONAN, and HAWKINS, Circuit Judges.

## MEMORANDUM *

Flying J, Inc., brought this infringement and conversion action, alleging that the defendants wrongfully acquired copyrighted architectural plans to build a truck stop known as the Madera Travel Center ("MTC"). A jury found defendants Central California Kenworth, Inc. ("CCK"), Tommy Pistacchio, and Ron Daggett liable on the infringement and conversion claims, awarding as damages both lost franchise fees and MTC profits. On remittitur, the court struck MTC profits to avoid double recovery. The court also denied Flying J's motion to permanently enjoin the operation of the truck stop. CCK and Pistacchio (collectively "appellants") appeal, alleging that Flying J cannot recover damages for the use of a building constructed with copyrighted plans, and that the damages awarded are speculative. Flying J cross-appeals, alleging error in the denial of the permanent injunction.

The parties are familiar with the facts underlying the proceedings, and we do not recite them here. We have jurisdiction over these appeals under 28 U.S.C. § 1291 and affirm the rulings of the district court.

## A. Actual Damages Award

◼ Appellants first argue that the actual damages award based on Flying J's lost franchise fees is unduly speculative, and impermissibly provides recovery for noninfringed items. This argument was raised below in appellant's renewed post-trial Rule 50(b) motion for judgment as a matter of law, and in its Rule 59 motion for a new trial. We review the district court's denial of appellants' renewed motion for judgment as a matter of law de novo. *See Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222, 1226 (9th Cir. 2001). Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 864 (9th Cir. 1999). We review rulings on a motion for a new trial for an abuse of discretion. *See Far Out Prod., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir.2001).

We consider first whether the lost franchise fee measure of actual damages is speculative as a matter of law. Actual damages for infringement are measured according to "market value," which means "what a willing buyer would have been reasonably required to pay a willing seller for the plaintiff's work." *See Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir.1985) (*Frank I*). The district court properly relied on *Cream Records Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 827–28 (9th Cir. 1983), and *Eales v. Environmental Lifestyles, Inc.*, 958 F.2d 876 (9th Cir.1992), to conclude that market value is a proper measure of actual damages for the infringement at issue here.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

The record testimony of Jay Call and Philip Adams supports Flying J's contention that the plans are nowhere available except through purchase of a Flying J franchise, and that the floor plans are an integral part of the value of the franchise to the franchisee. Evidence also showed that the price of a Flying J franchise was $75,000, plus one cent per gallon on fuel sales, plus five percent of non-fuel sales, and that these figures amounted to $3,740,391.00 from the date of infringement through the date of the jury's verdict. While a Flying J franchise fee commands benefits beyond the copyrighted floor plan, appellants' own damages expert did not assign specific valuations to the various elements of the Flying J franchise and was therefore barred from offering apportionment testimony. No other testimonial or documentary evidence was available to allow the jury to calculate a discounted franchise fee to value the plans. Just as in *Cream Records*, there was no evidence presented that the copyrighted architectural plans were available (or could be valued) for less than the price of a Flying J franchise. Given the state of the record on the apportionment issue, and the consistent acceptance in this circuit of market value as a measure of actual damages for copyright infringement, we conclude that the lost franchise fee actual damages award is not speculative as a matter of law.

Appellants also argue that the lost franchise fee damages award inappropriately measures the value of "use" of the MTC structure, not the market value of the infringed floor plans; therefore the lost franchise fee award fails to appreciate the distinction between protections under patent and copyright law. We disagree. The lost franchise fees do not reflect the value of use of the architectural plans based on alleged design efficiencies, but the value of the plans as measured by "what a willing buyer would have been reasonably required to pay to a willing seller for the plaintiff's work," *Frank I*, 772 F.2d at 512. Such a market value is well established as a measure of actual damages available for acts of copyright infringement. *Id.; Eales*, 958 F.2d at 880 (9th Cir.1992).

■ Finally, appellants argue that evidence adduced at trial failed to establish a causal link between the act of infringement and the award of lost franchise fees as a measure of actual damages. The jury was instructed that Flying J bore the burden of showing "with reasonable probability that the infringement was the cause of its loss of revenue." Flying J's damages expert determined a value of a Madera Flying J franchise by examining actual franchise revenue streams from comparable Flying J franchises. Consistent with *Frank I*, the court instructed the jury that the market value was the appropriate measure of actual damages. The jury's verdict reflects the conclusion that the lost franchise fees were an adequate valuation of the copyrighted plans, that the MTC was a Flying J facility, and that Flying J would have realized franchise fees if the plans used to build the MTC had been lawfully acquired. To establish a causal link it was only necessary that Flying J produce evidence that but for the act of infringement, appellants would not have been able to secure the plans unless they purchased a Flying J franchise. The evidence sufficiently establishes this nexus.

The court correctly applied the applicable law in allowing evidence of lost franchise fee actual damages evidence before the jury, and the record supports by substantial evidence the jury's decision to award the actual damages figure for the copyright violation. We therefore affirm the trial court's rulings with respect to

appellants' post-trial motions concerning actual damages.

## B. Infringer's Profits

Because we find no reason to disturb the court's actual damages award, appellants' arguments with respect to infringer's profits are moot. The court granted and Flying J accepted, appellants' motion for remittitur to strike the award of infringer's profits so as to avoid double recovery.

## C. Denial of Flying J's Motion for Permanent Injunction

■ Flying J cross-appeals, alleging that the district court erroneously denied an injunction that would prohibit continued operation of the MTC. Flying J first argues that the court committed factual error in concluding that Flying J suffers no harm from ongoing business at the MTC. Flying J contends that it suffers irreparable harm as long as the infringing MTC floor plan is operated under the name of its competitor, Pilot. Flying J distinguishes as a separate harm its continued loss of franchise fees beyond the date of the jury's judgment, after which no lost fees were awarded.

The record does not support Flying J's claim of factual error. The court expressly recognized that Flying J may suffer future harms; it simply did not allow Flying J a remedy for them. Flying J's artful distinction regarding its future harms is an attempt to cast the injunction as a remedy not precluded by a Rule 37(c)(1) sanction against Flying J for discovery violations. The court prohibited evidence of future damages under Rule 37 because Flying J's damages expert failed to include calculations of future damages in his expert report and concluded that the failure operated to the prejudice of the defendants.

Certainly there is a difference between presenting evidence of future monetary damages and requesting an equitable remedy to allay future harm. However, it does not appear the court abused its discretion in concluding that the requested prospective equitable relief was an attempt to "end-run" a sanction prohibiting prospective legal relief.

■ Flying J also argues that the court should not have denied the injunction on the ground that non-party Pilot's due process rights would be adversely affected. Flying J contends that Pilot had previously disclaimed its interest in the litigation in a prior motion to quash a subpoena, and judicial estoppel prevented the court from basing its denial of the injunction on a finding that Pilot would be adversely affected. The application of judicial estoppel here appears to be completely inapposite. First, Pilot is not a party to the litigation, and judicial estoppel seeks to prevent *parties* from asserting inconsistent positions to gain advantage. *See Hamilton v. State Farm Fire and Cas. Co.*, 270 F.3d 778, 782 (9th Cir.2001). Second, judicial estoppel is an equitable doctrine of the court and Flying J cannot argue that its use is required in this instance. Finally, the supposedly inconsistent position-that Pilot does indeed have rights and interests at stake in the litigation-is urged *by the court*, not by Pilot. Flying J offers no precedent to support its novel conception of judicial estoppel, and it does not appear that the court abused its discretion in denying the requested injunction to safeguard the rights and interests of the adversely affected non-party.

AFFIRMED.