MASIMO CORPORATION, a Delaware Corporation, Plaintiff–Appellant,

v.

TYCO HEALTH CARE GROUP, L.P.; et al., Defendants–Appellees.

Masimo Corporation, a Delaware Corporation, Plaintiff–Appellee,

v.

Tyco Health Care Group, L.P.; et al., Defendants–Appellants.

Nos. 07–55960, 07–56017.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 2008.

Oct. 28, 2009.

Stephen E. Morrissey, Esquire, Stephen D. Susman, Esquire, Susman Godfrey L.L.P., Los Angeles, CA, Houston, TX, M. Laurence Popofsky, Deborah K. Croyle, Scott A. Westrich, Orrick Herrington & Sutcliffe LLP, San Francisco, CA, for Plaintiff–Appellant.

Theodore J. Boutrous, Jr., Christopher D. Dusseault, James C. Ho, Gibson Dunn & Crutcher, LLP, Craig N. Hentschel, Esquire, Dykema Gossett LLP, Margaret A. Farrand, Office of the Federal Public Defender, Los Angeles, Theodore Olson, Gibson Dunn & Crutcher, LLP, CA, David A. Balto, Esquire, Law Offices of David Balto, esq., Scott A. Sher, Esquire, Wilson Sonsini Goodrich & Rosati Professional Corporation, Jeffrey A. Lamken, Esquire, Baker Botts, LLP, Washington, DC, James Donato, Stephen C. Neal, Esquire, John F. Young, Esquire, Cooley Godward Kronish, LLP, San Francisco, CA, Palo Alto, CA, Reston, VA, Dominic Lanza, Assistant U.S., United States Attorney Office, District of Arizona, Phoenix, AZ, Jonathan M. Jacobson, Wilson Sonsini Goodrich & Rosati Professional Corpora-

tion, New York, NY, for Defendants–Appellees.

Before: BRUNETTI, SILVERMAN and BEA, Circuit Judges.

## MEMORANDUM *

This appeal involves antitrust challenges to three of Tyco's business practices in the pulse oximetry market: (1) sole source agreements, (2) market share discounts, and (3) bundled discounts. Masimo appeals the district court's decision to vacate the jury's liability verdict insofar as it related to Tyco's bundling agreements. Alternatively, Masimo argues it is entitled to a new trial to prove Tyco's bundling practices fail the discount attribution test established by this court in *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir.2008). Masimo also appeals the district court's decision to limit damages to pre-July 2001 and its decision to deny Masimo's motion for a permanent injunction. Tyco crossappeals, arguing it is entitled to JMOL on all claims. Tyco also appeals the district court's decision granting Masimo damages for lost sensors after July 2001. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

■ First, the district court did not err in vacating the jury's verdict regarding Tyco's bundling agreements under § 2 of the Sherman Act. The Supreme Court's reasoning in *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993),

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

"show[s] a measured concern to leave unhampered pricing practices that might benefit consumers, absent the clearest showing that an injury to the competitive process will result." *PeaceHealth,* 515 F.3d at 902. The exclusionary conduct element of a § 2 claim therefore "cannot be satisfied by reference to bundled discounts unless the discounts result in prices that are below an appropriate measure of the defendant's costs." *Id.* at 903. Because Masimo did not allege anticompetitive tying or pricing, Tyco's bundled discounts cannot, as a matter of law, violate § 2. *See id.*

Despite the fact that this court has held that bundled discounts may not be considered exclusionary conduct unless they fail the discount attribution test, *PeaceHealth,* 515 F.3d at 895, 909 ("the only bundled discounts condemned as exclusionary are those that would exclude an equally efficient producer of the competitive products or products"), *PeaceHealth* did leave open the possibility that application of the discount attribution test may be inappropriate " 'outside the bundled pricing context, for example in tying or exclusive dealing cases.' " *See id.* at 916 n. 27 (quoting Antitrust Modernization Comm'n, *Report and Recommendations* 97, 114 n.157 (2007)). This is the linchpin of Masimo's bundling argument on appeal—that Tyco's bundling practices were actually illegal market-share discounts, rather than general bundled discounts.

There is truth to Masimo's argument. Tyco's bundling contracts gave customers a price discount for purchasing a number of unrelated products together, one being pulse oximetry. However, receipt of the discount was conditioned upon customers purchasing 90–95% of their *requirements* of those products from Tyco. If a customer bought less than the required minimum, the discounts would be lost or decreased.

That is conditioning the discount on the requirement of near complete exclusivity. This effectively prevents customers from dealing in the goods of competitors, if the customers want to obtain Tyco's discount. That is the hallmark of exclusive dealing.

Nonetheless, even if the jury could have concluded that certain bundling contracts were exclusive dealing arrangements (rather than general bundled discounts or tying arrangements), the jury's liability verdicts cannot be sustained. As the district court determined, the evidence in the trial record concerning the pervasiveness and effects of Tyco's varied bundling arrangements was insufficient to support a finding that the arrangements foreclosed competition in a substantial share of the relevant market. *Tampa Elec. Co. v. Nashville Coal Co.,* 365 U.S. 320, 327, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); *United States v. Microsoft Corp.,* 253 F.3d 34, 69 (D.C.Cir.2001); *Omega Envtl., Inc. v. Gilbarco, Inc.,* 127 F.3d 1157, 1162–63 (9th Cir.1997). We therefore affirm the district court's judgment vacating the jury's liability verdicts insofar as they related to Tyco's bundling practices.

■ Furthermore, because Masimo chose to proceed on a single theory of liability regarding Tyco's bundling arrangements, it is not now entitled to a new trial of the issue on a different theory. *Zhang v. American Gem Seafoods, Inc.,* 339 F.3d 1020, 1028–29 (9th Cir.2003) ("The failure to raise [an] issue prior to the return of the verdict results in a complete waiver, precluding our consideration of the merits of the issue."). Therefore, the district court did not abuse its discretion in denying Masimo's motion for a new trial.

■ Additionally, the district court properly determined that a reasonable jury, based on the evidence offered at trial, could have concluded Tyco's sole source and market share agreements violated the

antitrust laws. On appeal, both parties offered the same evidence that had been presented to the jury and reviewed by the district court. None of the reasons proffered by Tyco on appeal compels reversal of the jury's verdict; we therefore affirm. *See Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222, 1226–27 (9th Cir.2001) (In determining whether a jury verdict is supported by substantial evidence, a court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion).

■ Next, the district court properly determined, also based on the evidence offered at trial, that all harm incurred by Masimo on account of Tyco's anticompetitive conduct occurred before July 2001. The district court's adherence to the July 2001 cutoff date does not "absolute[ly]" lack evidentiary support. *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1013 (9th Cir.2007) (denial of new trial is entitled to "great deference" and should be reversed only "where there is an *absolute absence of evidence*" supporting the verdict (emphasis in original)). Rather, the district court affirmed the jury's July 2001 damages cutoff on the basis of evidence offered at trial and, more importantly, on Masimo's own words that "the period between 1998 and 2001" was the period "when all harm was done to us." Therefore, the district court did not abuse its discretion in denying Masimo a new trial on damages.

■ In calculating damages, the district court gave deference to the jury finding of no post-July 2001 damages, yet appeared to award some post-July 2001 damages. Although seemingly inconsistent with the jury's finding, this additional damage award was not error. The district court merely concluded that Masimo should receive damages associated with monitor

sales lost *pre-July 2001* as a result of Tyco's anticompetitive conduct (consistent with the jury's finding) which consequently includes the flow of lost sensor sales stemming from the lifespan (post-July 2001) of such monitors. Because of this installed base of Tyco monitors, the district court correctly determined that a hard stop on damages would prematurely cut off Masimo's damages. Further, because Masimo offered unreasonable models for calculating damages, it was not clear error for the district court to adopt Tyco's model, the only reasonable alternative, as its basis for calculating damages. *Shimko v. Guenther*, 505 F.3d 987, 990 (9th Cir.2007) (the district court's determinations, as finder of fact, are subject to the clear error standard).

Finally, the district court did not abuse its discretion when it determined, based on the evidence offered at trial, that harm to Masimo had ceased by July 2001 and, as a result, Masimo was not suffering, or likely to suffer, antitrust injury from Tyco's anticompetitive conduct. *See Ting v. AT & T*, 319 F.3d 1126, 1134–35 (9th Cir.2003).

**AFFIRMED.**

BEA, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the result, and with the majority's reasoning except for the way in which the majority affirms the district court's grant of judgment as a matter of law ("JMOL") to Tyco on Masimo's bundling claim.

I agree that bundled discounts are not per se illegal so long as, after applying the discount-attribution test, the discounted price is above cost. *Cascade Health Solutions v. PeaceHealth*, 502 F.3d 895 (9th Cir.2007), *amended* 515 F.3d 883 (9th Cir. 2008). I also think that Tyco's "bundled discounts" were multi-product market-

share discounts, because a condition of obtaining such "bundled discounts" was that Tyco's customers had to purchase 90–95% of their *requirements* of those products from Tyco. Therefore, this is a case where the *PeaceHealth* standard should not apply because we stated in that case that the test would be inappropriate "outside the bundled pricing context, for example in tying or exclusive dealing cases." *Id.* at 916 n. 27.

I would conclude, however, that we must nonetheless affirm the district court's grant of JMOL to Tyco on Masimo's claim Tyco's bundling contracts amounted to exclusive dealing because Masimo waived the argument that Tyco's bundling agreements should be treated as market-share discounts. Masimo's theory at trial was that bundling itself, i.e., the act of conditioning a discount on the requirement that a customer purchase two of a seller's products together, was a form of exclusive dealing. This is evidenced by the jury instruction Masimo submitted, which stated:

> To prevail on its monopolization claim, Masimo must prove Tyco engaged in anticompetitive or *exclusionary conduct.* ... Specifically, Masimo claims that Tyco:
>
> (1) Entered into product bundling contracts that condition the receipt of rebates or discounts on purchasing *both oximetry products and other unrelated products;*
>
> (2) Entered in to market-share based compliance pricing contracts that condition the receipt of rebates, prices or discounts on purchasing specified percentages *of oximetry products* from Tyco.

(emphasis added). The jury instructions allowed the jury to consider the exclusionary effect of market-share discounts only insofar as those discounts applied to single-product oximetry contracts. Masimo's theory with respect to the multi-product contracts was that the bundling itself was exclusionary.

Because Masimo waived the argument that Tyco's multi-product contracts are invalid as exclusive market-share discounts, I would conclude we can consider only whether the bundling aspects of Tyco's multi-product contracts are valid or invalid. The effect of the market-share requirement as a condition of taking the "bundled discount" can be disregarded. As a result, because Masimo never argued Tyco's bundling resulted in below-cost pricing, it has failed under *PeaceHealth* to establish such bundling violates the antitrust laws.

The majority reaches the same result but for what I see as the wrong reason. The majority concludes that the district court correctly held that there was insufficient evidence to support the jury's liability verdict that Tyco's bundling contracts constituted exclusive dealing arrangements, because Masimo had not shown the bundling arrangements foreclosed competition in a substantial share of the relevant market. Maj. Op. at 97. However, the district court based this conclusion on the fact that some of Tyco's bundling contracts included products from manufacturers other than Tyco, and therefore, "it was impossible for the jury to determine, even in general terms, how much of the bundled oximetry sales were sold in connection with anti-competitive bundling practices as compared to legal bundling practices." ER 39, 43. If the bundled discount included products from Tyco and another manufacturer, the element of exclusivity in the bundled discount was gone. Tyco did not offer the discount conditioned on the requirement that the consumer not deal in the goods of a competitor, and therefore those contracts could not constitute exclusive dealing arrangements.

That means the district court's conclusion applies only with respect to the theory that bundling itself is a form of exclusive dealing, a theory that no longer holds water after *PeaceHealth*. Thus, the majority errs when it affirms on this analysis.