MEMORANDUM *
This appeal involves antitrust challenges to three of Tyco’s business practices in the pulse oximetry market: (1) sole source agreements, (2) market share discounts, and (3) bundled discounts. Masimo appeals the district court’s decision to vacate the jury’s liability verdict insofar as it related to Tyco’s bundling agreements. Alternatively, Masimo argues it is entitled to a new trial to prove Tyco’s bundling practices fail the discount attribution test established by this court in Cascade Health Solutions v. PeaceHealth, 515 F.3d 883 (9th Cir.2008). Masimo also appeals the district court’s decision to limit damages to pre-July 2001 and its decision to deny Masimo’s motion for a permanent injunction. Tyco crossappeals, arguing it is entitled to JMOL on all claims. Tyco also appeals the district court’s decision granting Masimo damages for lost sensors after July 2001. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
First, the district court did not err in vacating the jury’s verdict regarding Tyco’s bundling agreements under § 2 of the Sherman Act. The Supreme Court’s reasoning in Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993), *97 “show[s] a measured concern to leave unhampered pricing practices that might benefit consumers, absent the clearest showing that an injury to the competitive process will result.” PeaceHealth, 515 F.3d at 902. The exclusionary conduct element of a § 2 claim therefore “cannot be satisfied by reference to bundled discounts unless the discounts result in prices that are below an appropriate measure of the defendant’s costs.” Id. at 903. Because Masimo did not allege anticompetitive tying or pricing, Tyco’s bundled discounts cannot, as a matter of law, violate § 2. See id.
Despite the fact that this court has held that bundled discounts may not be considered exclusionary conduct unless they fail the discount attribution test, PeaceHealth, 515 F.3d at 895, 909 (“the only bundled discounts condemned as exclusionary are those that would exclude an equally efficient producer of the competitive products or products”), PeaceHealth did leave open the possibility that application of the discount attribution test may be inappropriate “ ‘outside the bundled pricing context, for example in tying or exclusive dealing cases.’ ” See id. at 916 n. 27 (quoting Antitrust Modernization Comm’n, Report and Recommendations 97, 114 n.157 (2007)). This is the linchpin of Masimo’s bundling argument on appeal — that Tyco’s bundling practices were actually illegal market-share discounts, rather than general bundled discounts.
There is truth to Masimo’s argument. Tyco’s bundling contracts gave customers a price discount for purchasing a number of unrelated products together, one being pulse oximetry. However, receipt of the discount was conditioned upon customers purchasing 90-95% of their requirements of those products from Tyco. If a customer bought less than the required minimum, the discounts would be lost or decreased. That is conditioning the discount on the requirement of near complete exclusivity. This effectively prevents customers from dealing in the goods of competitors, if the customers want to obtain Tyco’s discount. That is the hallmark of exclusive dealing.
Nonetheless, even if the jury could have concluded that certain bundling contracts were exclusive dealing arrangements (rather than general bundled discounts or tying arrangements), the jury’s liability verdicts cannot be sustained. As the district court determined, the evidence in the trial record concerning the pervasiveness and effects of Tyco’s varied bundling arrangements was insufficient to support a finding that the arrangements foreclosed competition in a substantial share of the relevant market. Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); United States v. Microsoft Corp., 253 F.3d 34, 69 (D.C.Cir.2001); Omega Envtl., Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1162-63 (9th Cir.1997). We therefore affirm the district court’s judgment vacating the jury’s liability verdicts insofar as they related to Tyco’s bundling practices.
Furthermore, because Masimo chose to proceed on a single theory of liability regarding Tyco’s bundling arrangements, it is not now entitled to a new trial of the issue on a different theory. Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1028-29 (9th Cir.2003) (“The failure to raise [an] issue prior to the return of the verdict results in a complete waiver, precluding our consideration of the merits of the issue.”). Therefore, the district court did not abuse its discretion in denying Masimo’s motion for a new trial.
Additionally, the district court properly determined that a reasonable jury, based on the evidence offered at trial, could have concluded Tyco’s sole source and market share agreements violated the *98 antitrust laws. On appeal, both parties offered the same evidence that had been presented to the jury and reviewed by the district court. None of the reasons proffered by Tyco on appeal compels reversal of the jury’s verdict; we therefore affirm. See Johnson v. Paradise Valley Unified School Dist., 251 F.3d 1222, 1226-27 (9th Cir.2001) (In determining whether a jury verdict is supported by substantial evidence, a court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury’s conclusion).
Next, the district court properly determined, also based on the evidence offered at trial, that all harm incurred by Masimo on account of Tyco’s anticompetitive conduct occurred before July 2001. The district court’s adherence to the July 2001 cutoff date does not “absolute[ly]” lack evidentiary support. Merrick v. Paul Revere Life Ins. Co., 500 F.3d 1007, 1013 (9th Cir.2007) (denial of new trial is entitled to “great deference” and should be reversed only “where there is an absolute absence of evidence ” supporting the verdict (emphasis in original)). Rather, the district court affirmed the jury’s July 2001 damages cutoff on the basis of evidence offered at trial and, more importantly, on Masimo’s own words that “the period between 1998 and 2001” was the period “when all harm was done to us.” Therefore, the district court did not abuse its discretion in denying Masimo a new trial on damages.
In calculating damages, the district court gave deference to the jury finding of no post-July 2001 damages, yet appeared to award some post-July 2001 damages. Although seemingly inconsistent with the jury’s finding, this additional damage award was not error. The district court merely concluded that Masimo should receive damages associated with monitor sales lost pre-July 2001 as a result of Tyco’s anticompetitive conduct (consistent with the jury’s finding) which consequently includes the flow of lost sensor sales stemming from the lifespan (post-July 2001) of such monitors. Because of this installed base of Tyco monitors, the district court correctly determined that a hard stop on damages would prematurely cut off Masimo’s damages. Further, because Masimo offered unreasonable models for calculating damages, it was not clear error for the district court to adopt Tyco’s model, the only reasonable alternative, as its basis for calculating damages. Shimko v. Guenther, 505 F.3d 987, 990 (9th Cir.2007) (the district court’s determinations, as finder of fact, are subject to the clear error standard).
Finally, the district court did not abuse its discretion when it determined, based on the evidence offered at trial, that harm to Masimo had ceased by July 2001 and, as a result, Masimo was not suffering, or likely to suffer, antitrust injury from Tyco’s anti-competitive conduct. See Ting v. AT & T, 319 F.3d 1126, 1134-35 (9th Cir.2003).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.