**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 11 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| S&G LABS HAWAII, LLC, a Hawaii Limited Liability Company, <br><br>                Plaintiff-ctr-defendant - Appellant, <br><br>   v. <br><br> DARREN GRAVES, <br><br>                Defendant-ctr-claimant - Appellee, <br><br>   v. <br><br> LYNN PUANA, M.D., <br><br>                Third-pty-defendant - Appellant. | No. 24-823 <br><br> D.C. No. 1:19-cv-00310-LEK-WRP <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted February 11, 2025
Honolulu, Hawaii

Before: S.R. THOMAS, BRESS, and DE ALBA, Circuit Judges.

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

S&G Labs Hawaii, LLC ("S&G") and Dr. Lynn Puana appeal following a jury's award of more than $8 million to Darren Graves on his counterclaims for breach of contract, wrongful termination, and defamation.  Unless otherwise noted, we refer to appellants collectively as "S&G."  We review legal issues de novo, *see Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1131 (9th Cir. 2021), and the jury's verdict for substantial evidence, *see Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997).  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.    S&G argues that Graves's claim for breach of contract failed because his employment agreement was unlawful under the Eliminating Kickbacks in Recovery Act ("EKRA"), 18 U.S.C. § 220(a)(2)(A), and thus unenforceable under state law.  *See Beneficial Hawaii, Inc. v. Kida*, 30 P.3d 895, 912–18 (Haw. 2001).  In *United States v. Schena*, No. 23-2989, --- F.4th --- (9th Cir. July 11, 2025)[1], we rejected the district court's determination in this case that EKRA applies only to payments made to persons who are "working with" individual patients.  *Schena* Slip Op. at 9–11.  Nevertheless, we may affirm on any ground apparent from the record.  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001).  In *Schena*, we further held that although payments to marketers can run afoul of EKRA,

---

[1] The *Schena* appeal was also assigned to this panel and was argued before us in coordination with this case.

"a percentage-based compensation structure for marketing agents, without more, does not violate EKRA." *Schena* Slip Op. at 13. Because that is all that S&G came forward with here, it has not shown that Graves's employment arrangement was illegal under EKRA and thus unenforceable under Hawaii law.

2.      S&G's only challenge to the award of $352,333.33 in back pay for wages after Graves's salary reduction but before termination is that EKRA invalidated his employment contract. Because we conclude that the contract was not invalid under EKRA, we affirm the jury's back pay award.

3.      We affirm the related $438,964.48 civil penalty imposed by the district court. Under Hawaii law, an employer who withholds wages "without equitable justification" is subject to a penalty equal to 100% of the wages withheld plus interest. Haw. Rev. Stat. § 388-10(a). An employer acts "without equitable justification" when it lacks "a good faith non-arbitrary defense." *Arimizu v. Fin. Sec. Ins. Co.*, 679 P.2d 627, 631 n.4 (Haw. Ct. App. 1984) (quoting *Carriere v. Pee Wee's Equip. Co.*, 364 So.2d 555, 557 (La. 1978)).

The evidence supports the district court's finding that S&G lacked a good-faith non-arbitrary defense, nor did the district court commit any legal error. The record supports the district court's determination that S&G began to withhold wages when Graves refused to agree to a non-compete clause, not when S&G became worried about the potential impact of EKRA. The evidence further supports the

district court's determination that Dr. Puana "tried to capitalize on the passage of EKRA to obtain Graves's agreement to a non-compete clause" and withheld Graves's wages as punishment for his refusal to agree to the non-compete restrictions. Accordingly, the district court did not err in concluding that S&G withheld Graves's wages without equitable justification. Haw. Rev. Stat. § 388-10(a).

4.     We affirm the jury's $3.5 million award for breach of contract based on Graves's anticipated pay for the remaining time on his contract after S&G terminated him. Under Hawaii law, "[t]he measure of recovery by a wrongfully discharged employee is the amount of compensation agreed upon for the remaining period of service, less the amount which the employer affirmatively proves the employee has earned or with reasonable effort might have earned from other employment." *Vieira v. Robert's Haw. Tours, Inc.*, 630 P.2d 120, 122 (Haw. Ct. App. 1981). As S&G does not cite any evidence as to what Graves made or could have reasonably made during the relevant period, we consider only the compensation due under the contract.

The parties agree that the jury computed the $3.5 million award by using the $1 million commission-free salary that Dr. Puana proposed as an alternative compensation arrangement, multiplied by the three and a half remaining years on the contract. Dr. Puana testified at trial that she calculated the $1 million per-year

proposed salary based on what she thought was fair given the amount of business Graves was bringing in at the time. That testimony was uncontroverted. Although the alternate arrangement was never agreed to by Graves, Dr. Puana's estimation of a fair fixed salary provided a reasonable basis for the jury to determine what Graves would have received had he remained at S&G.

5. We affirm the $1 million in punitive damages that the jury awarded Graves for wrongful termination and whistleblower retaliation.[2] As an initial matter, S&G waived this challenge. A failure to file a post-verdict motion under Federal Rule of Civil Procedure Rule 50(b) is an absolute bar to seeking judgment as a matter of law or a new trial on appeal. *Unitherm Food Sys. Inc. v. Swift-Eckrich*, *Inc.*, 546 U.S. 394, 401–03 (2006). A post-verdict motion on one aspect of the case is insufficient to preserve other issues for appeal. *See id.* at 398 n.2. While S&G filed a Rule 50(b) motion, it did not address the wrongful termination claims. Those were only addressed in the pre-verdict oral motion under Rule 50(a). The challenge was therefore waived.

Regardless, substantial evidence supports the jury's $1 million punitive damages award. *See In re Bard IVC Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1077 (9th Cir. 2020) (standard of review). The district court in its pre-verdict Rule 50(a)

---

[2] S&G does not challenge the $250,000 in general damages for these claims, so we do not address that part of the award.

order found that the stated reasons for termination appeared pretextual, and a reasonable jury could find that Graves was fired in retaliation for his filing of the counterclaims. Several of the alleged incidents referenced in the termination letter happened months before Graves's termination, and he was not disciplined for them. Graves was also denied any opportunity to respond to the allegations. Even if Graves may have admitted some of the conduct in the termination letter, the jury could have reasonably found that any admissions did not give S&G cause to fire Graves.

6. We affirm the jury's verdict on Graves's defamation claim against Dr. Puana, for which the jury awarded $500,000 in general damages and $2 million in punitive damages. We review the denial of a motion for judgment as a matter of law de novo, *see Image Tech Servs. Inc.*, 125 F.3d at 1224, and the denial of a motion for a new trial for abuse of discretion, *see Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1229 (9th Cir. 2001). Under Hawaii law, defamation requires

> (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Nakamoto v. Kawauchi*, 418 P.3d 600, 611 (Haw. 2018) (bracketed material in original) (quoting *Beamer v. Nishiki*, 670 P.2d 1264, 1271 (Haw. 1983)). Dr. Puana challenges whether a false statement was made, whether the communication was privileged, and the award of punitive damages. We reject these arguments.

6                                                                          24-823

*First*, the record supports that Dr. Puana made false statements. Two witnesses who were S&G clients credibly testified that Dr. Puana told them that Graves was no longer with the company at a time when Graves was merely suspended and was still being paid by S&G. Both witnesses recalled coming away from the conversations with the impression that Graves had been fired. Even if neither witness could recall Dr. Puana explicitly saying that Graves was fired, the jury could find false the statement that Graves was no longer with the company. There was thus a "legally sufficient basis to support" the jury's finding of a false statement. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).

*Second*, Dr. Puana was not shielded by a qualified privilege. Hawaii law recognizes that a qualified privilege "arises when the author of the defamatory statement reasonably acts in the discharge of some public or private duty, legal, moral, or social, and where the publication concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty." *Aku v. Lewis*, 477 P.2d 162, 166 (Haw. 1970). For the privilege to apply, the communications must be "of a type reasonably deemed to protect or further that interest." *Vlasaty v. Pacific Club*, 670 P.2d 827, 832 (Haw. App. 1983).

The jury could conclude that Dr. Puana knew that Graves was still with the company at the time she had the conversations with the clients. As the district court

explained, because the jury concluded that Dr. Puana falsely told S&G clients that Graves was no longer with the company, these were not the types of communications "reasonably deemed to protect or further" a common interest between Dr. Puana and S&G clients. *Id.* Thus, the district court did not err in finding the statements unprotected by a privilege.

*Third*, substantial evidence supports the jury's determination that punitive damages were appropriate in this case. Under Hawaii law, punitive damages "may be awarded in cases where the defendant has acted wantonly or oppressively with such malice as implies a spirit of mischief or criminal indifference to civil obligations; or where there has been some wil[l]ful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 347 (Haw. 1996) (quoting *Masaki v. General Motors Corp.*, 780 P.2d 566, 572 (Haw. 1989)). In the context of the broader body of evidence relating to Graves's past work for S&G, and S&G's reducing Graves's pay, firing him, and suing him for trade secret misappropriation, the jury could have concluded that Dr. Puana's statements to the two witnesses were made wantonly or maliciously to damage Graves's future employment prospects and earning potential.

**AFFIRMED.**

24-823